S. Michael Kernan, State Bar No. 181747
R. Paul Katrinak, State Bar No. 164057
THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
Telephone: (310) 490-9777
Facsimile: (310) 861-0503

Attorney for Defendants
Alberto Lensi and
Trans-American Films International Corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK DISALLE, an individual,<br><br>        Plaintiff<br><br>    v.<br><br>ALBERTO LENSI, an individual;<br>TRANS-AMERICAN FILMS<br>INTERNATIONAL CORPORATION,<br>a Delaware corporation; and DOES 1<br>through 10,<br><br>        Defendants. | Case Number: 2:22-CV-02152-SSS-PVCx<br><br>Assigned for all purposes to the Honorable Sunshine S. Sykes<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP RULE 56(f) AND THE PARTIES' AGREEMENT**<br><br>Date:        December 15, 2023<br>Time:        2:00 p.m.<br>Location:  Courtroom 2 |

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

# Table of Contents

I.    INTRODUCTION ................................................................................................ 1

II.    UNDISPUTED FACTS .................................................................................... 4

III.    LEGAL STANDARD .................................................................................... 4

IV.    ARGUMENT ...................................................................................................... 5

A.    Plaintiff's Complaint is Barred by the Statute of Limitations .................................... 5

1.    Plaintiff's Complaint is Based on Ownership Rights in Copyright and is Therefore Time Barred ........................................................................................................ 5

D.    Plaintiff Has No Rights in Or to the Bloodsport Franchise And Its Underlying Materials ....................................................................................................................... 14

1.    The Dux Agreement and Cannon Agreement Unambiguously Established Plaintiff's Rights, Including Plaintiff's Right to Make Either a Sequel to or Remake of Bloodsport, but Not Both .............................................................................. 14

2.    Bloodsport II was Undeniably a Sequel to Bloodsport .............................. 14

E.    The Trademark Aspects of Plaintiff's Declaratory Relief Claim Fail as Well ........ 15

1.    A Claim for Declaratory Relief is Invalid as a Standalone Cause of Action 15

2.    Plaintiff Cannot Assert a Claim for Copyright Infringement by Way of a Claim for Declaratory Relief ................................................................................ 15

See Complaint ¶1 (emphasis added). ........................................................................ 16

a.    Plaintiff Has No Standing to Assert a De-Facto Copyright Claim as Plaintiff Does Not Own the Bloodsport Copyrights .................................................... 16

b.    Plaintiff's Backdoor Declaratory Relief Claim for Copyright Infringement is Preempted ............................................................................................................. 17

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

MEMORANDUM OF POINTS AND AUTHORITIES

**F.    Plaintiff Has No Evidence to Establish the Elements of His Trademark Causes of Action, Requiring Summary Judgment in Defendants' Favor on Plaintiff's Second Cause of Action for Federal Unfair Competition and Plaintiff's Fifth Cause of Action for Federal Common Law Trademark Infringement** ................................................................. 18

**1.    Defendants, not Plaintiff, have Priority of Use** ............................................. 19

**2.    Plaintiff's Repeated Assertion that Defendants had "No Involvement" in Bloodsport, Bloodsport II, and Bloodsport III is Misleading and Misinterprets the Law Regarding Secondary Meaning** ............................................. 21

**3.    Because Defendants Hold the Common Law and Statutory Rights in the BLOODSPORT Trademark, Any Use of the BLOODSPORT Trademark by Plaintiff to Make a Film Would Actually Cause a High Likelihood of Confusion with Defendants' BLOODSPORT Trademark** ............................................. 22

**4.    Plaintiff Has Provided No Evidence of Damages or of Lost Goodwill in Relation to His Trademark Causes of Action** ............................................. 24

**G.    Plaintiff Has No Evidence, Let Alone Clear and Convincing Evidence, to Establish a Claim for Federal Fraudulent Trademark Registration** ............................................. 25

**1.    Plaintiff Has No Evidence That Defendants' Trademark Applications Contain a False Statement of Material Fact** ............................................. 26

**2.    Plaintiff Cannot Show by Clear and Convincing Evidence that Defendants Knowingly Made a False Statement of Material Fact to the PTO** ............................................. 26

**3.    Plaintiff Cannot Show by Clear and Convincing Evidence that Defendants Had the Required Intent to Defraud the PTO** ............................................. 27

**4.    Plaintiff Cannot Show by Clear and Convincing Evidence that He Was Damaged in Any Way by Defendants' Registrations of the BLOODSPORT Trademark   28**

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

**H.** **Plaintiff Has No Evidence to Establish the Elements of Federal Trademark Dilution, Requiring Summary Judgment in Defendants' Favor on Plaintiff's Fourth Cause of Action for Federal Trademark Dilution**................................................................29

**V.** **CONCLUSION**...........................................................................................................32

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Table of Authorities**

**Page(s)**

**Cases**

698 F. Supp. 1274 (E.D. Pa. 1988) ........................................................................ 21

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) ..................................................................... 7, 8

*Adidas-America, Inc., v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) ................................................................ 12

*American Sec. Bank v. American Sec. & Trust Co.*,
   571 F.2d 564 (C.C.P.A.1978) ......................................................................... 28

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) .......................................................................... 22

*Amstar Corp. v. Domino's Pizza, Inc.*,
   615 F.2d 252, 205 U.S.P.Q. 969 (5th Cir. 1980) ............................................. 32

*Applied Info. Scis. Corp. v. eBay, Inc.*,
   511 F.3d 966 (9th Cir. 2007) ..................................................................... 18, 23

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
   575 U.S. 138 (2015) ....................................................................................... 20

*Bd. of Regents, Univ. of Texas Sys. v. KST Elec, Ltd.*,
   550 F.Supp.2d 657 (W.D. Tex. 2008) .............................................................. 30

*Benay v. Warner Bros. Entertainment, Inc.*,
   (9th Cir. 2010) 607 F.3d 620 ......................................................................... 16

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ....................................................................... 23

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) ......................................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................... 5

*City of Sherrill, N.Y. v. Oneida Indian Nation of New York*,
   544 U.S. 197 (2005) ....................................................................................... 12

*Comedy III Prod., Inc. v. New Line Cinema*,
   200 F.3d 593 (9th Cir. 2000) ......................................................................... 18

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) ......................................................................... 12

*eAcceleration Corp. v. Trend Micro, Inc*,
   408 F.Supp. 2d 1110 (W.D. Wash. 2006) ........................................................ 18

*Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*,
   707 F.3d 869 (7th Cir. 2013) ......................................................................... 16

*Edge Games, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
   2015 WL 3498607 (C.D. Cal. June 2, 2015) ................................................... 24

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ........................................................................ 17

*Far Out Prods., Inc. v. Oskar*,
  247 F.3d 986 (9th Cir. 2001) ........................................................................... 27

*Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*,
  772 F.Supp.2d 1155 (C.D. Cal. 2009) ............................................................ 22

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) .................................................................................. 3, 17

*Gates Rubber Co. v. Bando Chemical Industries, Ltd.*,
  9 F.3d 823 (10th Cir.1993) .............................................................................. 17

*Grupo Gigante SA De CV v. Dallo & Co., Inc.*,
  391 F.3d 1088, 73 U.S.P.Q.2d 1258 (9th Cir. 2004) ...................................... 31

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
  739 F. Supp. 1392 (C.D. Cal. 1990) ................................................................ 11

*Halo Mgmt., LLC v. Interland, Inc.*,
  308 F. Supp. 2d 1019 (N.D. Cal. 2003) ........................................................... 25

*Hampton v. Paramount Pictures Corp.*,
  279 F.2d 100 (9th Cir. 1960) ....................................................................... 9, 10

*Hana Fin., Inc. v. Hana Bank*,
  500 F. Supp. 2d 1228 (C.D. Cal. 2007) ........................................................... 26

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  723 F.2d 195 (2d Cir.1983) ............................................................................. 17

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
  736 F.3d 1239 (9th Cir. 2013) ........................................................................ 31

*Hummel v. Nw. Tr. Servs., Inc.*,
  180 F. Supp. 3d 798 (W.D. Wash. 2016) ........................................................ 15

*Iancu v. Brunetti*,
  139 S. Ct. 2294 (2019) ..................................................................................... 20

*In re Bose Corp.*,
  580 F.3d 1240 (Fed. Cir. 2009) .......................................................... 25, 27, 28

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ......................................................................... 4, 5

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993) .......................................................................... 24, 28

*Interscope Recs. v. Time Warner, Inc.*,
  2010 WL 11505708 (C.D. Cal. June 28, 2010) .......................................... 10, 11

*Jackson v. Axton*,
  25 F.3d 884 (9th Cir. 1994) ............................................................................. 12

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir. 2008) ........................................................................... 18

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ...................................................................... 11, 12

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

MEMORANDUM OF POINTS AND AUTHORITIES

*Johnston v. Standard Mining Co.*,
    148 U.S. 360 (1893)............................................................................. 12

*Kelly Services Inc. v. Greene's Temporaries Inc.*,
    25 U.S.P.Q.2d 1460, 1992 WL 430461 (T.T.A.B. 1992)................................ 28

*Kling v. Hallmark Cards Inc.*,
    225 F.3d 1030 (9th Cir. 2000) .............................................................. 12

*Kwan*,
    634 F.3d ............................................................................................. 6

*L.D. Kichler Co. v. Davoil, Inc.*,
    192 F.3d 1349 (Fed. Cir. 1999) ...................................................... 26, 27

*Le v. Huynh*,
    2023 WL 3763801 (N.D. Cal. May 31, 2023)............................................ 17

*Levi Strauss & Co. v. Esprit US Distrib. Ltd.*,
    588 F. Supp. 2d 1076 (N.D. Cal. 2008) .................................................. 25

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) .............................................................. 24

*M2 Software, Inc. v. Viacom, Inc.*,
    223 F. App'x 653 (9th Cir. 2007)........................................................... 30

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996) ................................................................. 21

Marshak v. Green,
    505 F. Supp. 1054, 212 U.S.P.Q. 493 (S.D. N.Y. 1981) ............................ 10

*Masquerade Novelty, Inc. v. Unique Indus., Inc.*,
    912 F.2d 663 (3rd Cir.1990) ................................................................. 17

*Matal v. Tam*,
    582 U.S. 218 (2017)............................................................................. 18

*Metro Traffic Control, Inc. v. Shadow Network Inc.*,
    104 F.3d 336, 41 USPQ2d 1369 (Fed. Cir. 1997) .................................... 20

*Miller v. Glenn Miller*,
    318 F.Supp.2d 923 (C.D. Cal. 2004) ...................................................... 12

*Miller v. Glenn Miller Productions, Inc.*,
    454 F.3d 975 (9th Cir. 2006) ......................................................... 12, 13

*Motown Record Corp. v. George A. Hormel & Co.*,
    657 F.Supp. 1236 (C.D.Cal.1987) ......................................................... 17

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
    804 F.3d 930, 116 U.S.P.Q.2d 1583 (9th Cir. 2015)................................. 23

*North Coast*,
    972 F.2d ............................................................................................ 17

*Pak's Trading Eur. B.V. v. Target*,
    2018 WL 8333362 (C.D. Cal. July 5, 2018)............................................... 6

*Petrella*,
    572 U.S. ............................................................................................. 9

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff cites *Amusement Art, LLC v. Life is Beautiful, LLC*,
  2016 WL 6998566 (C.D. Cal. Nov. 29, 2016) ............................................ 28, 29
*Rearden LLC v. Rearden Commerce, Inc.*,
  683 F.3d 1190, 103 U.S.P.Q.2d 1161 (9th Cir. 2012)...................................... 23
*Ritchie v. Williams*,
  395 F.3d 283 .................................................................................................... 6
*Robi v. Five Platters, Inc.*,
  918 F.2d 1439 (9th Cir. 1990) ......................................................................... 25
*Rodeo Collection, Ltd. v. West Seventh*,
  812 F.2d 1215, 2 U.S.P.Q.2d 1204 (9th Cir. 1987)......................................... 23
*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
  477 F.3d 383 (6th Cir.2007) ............................................................................. 6
*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir.1989) .......................................................................... 17
*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
  2020 WL 5797826 (S.D. Cal. 2020)................................................................ 28
*Saul Zaentz Company d/b/a/ Tolkien Enterprises v. Wozniak Travel, Inc.*,
  627 F. Supp. 2d 1096 (N.D. Cal. 2010) ............................................................ 9
*Savin Corp. v. Savin Grp.*,
  391 F.3d 439 (2d Cir. 2004) ............................................................................ 29
*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
  96 F.3d 1217 (9th Cir. 1996) .......................................................................... 19
*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013) ................................................................... 5, 6, 7
*Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*,
  771 F.3d 632 (9th Cir. 2014) .......................................................................... 15
*Silva v. Sunich*,
  2006 WL 6116645 (C.D. Cal. Sept. 6, 2006) ................................................... 8
*Smith Int'l Inc. v. Olin Corp.*,
  209 USPQ 1033 (T.T.A.B. 1981) .................................................................... 25
*Stock W., Inc. v. Confederated Tribes of the Colville*,
  873 F.2d 1221 (9th Cir. 1989) ........................................................................ 15
*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017) ............................................................. 23, 24, 31
*Straughter v. Concord Music*,
  2020 WL 6821313 (C.D. Cal. 2020) ............................................................ 7, 8
*The Saenger Org., Inc., v. Nationwide Ins. Lic. Ass'n*,
  119 F.3d 55 (1st Cir. 1997)............................................................................ 7, 8
*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
  2015 WL 12752881 (C.D. Cal. Aug. 27, 2015) ................................................ 9
*Visa Int'l Serv. Assoc., v. JSL Corp.*,
  590 F. Supp. 2d 1306 (D. Nev. 2008)......................................................... 29, 30

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

*W. Fla. Seafood, Inc. v. Jet Rests., Inc.*,
  31 F.3d 1122, 31 USPQ2d 1660 (Fed. Cir. 1994) ............................................ 20

*Warner Bros. Entertainment, Inc. v. Global Asylum, Inc*.,
  544 Fed. Appx. 683, 41 Media L. Rep. (BNA) 2681 (9th Cir. 2013) .............. 21

*Watermark Publishers v. High Tech. Sys. Inc*.,
  1997 WL 717677 (S.D. Cal. Aug. 12, 1997) ..................................................... 11

*Woodstock's Enterprises Inc. (California) v. Woodstock's Enterprises Inc.*
  *(Oregon)*,
  43 U.S.P.Q.2d 1440 (T.T.A.B. 1997) ............................................................... 27

*Worth v. Universal Pictures, Inc.*,
  5 F. Supp. 2d 816 (C.D. Cal. 1997) .................................................................. 17

*Yedi, Inc. v. Universal Connect Wholesale, LLC*,
  2022 WL 3636123 (C.D. Cal. July 19, 2022) .................................................... 20

*Zuill v. Shanahan*,
  80 F.3d 1366 (9th Cir. 1996) ................................................................... 6, 7, 8

Statutes

15 U.S.C. § 1125(c)(2)(A) ................................................................................. 29
15 U.S.C. § 1127 ............................................................................................... 21
15 U.S.C.A. § 1115(a) ...................................................................................... 20
17 U.S.C. § 411(a) .................................................................................. 3, 15, 17
17 U.S.C. § 507(b) ............................................................................................. 5
17 USC Section 410(c) ................................................................................ 5, 17
*California Code of Civil Procedure* Section 343 ................................................. 9

Rules

Fed R. Civ. P. 56(a) ........................................................................................... 4
Federal Rule of Civil Procedure 56 .................................................................. 4
FRCP RULE 56(f) .............................................................................................. 1

Regulations

37 C.F.R. § 202.1 .............................................................................................. 16

Other Authorities

4 *McCarthy* § 24:39 .......................................................................................... 22
6 *McCarthy* § 31:68 .......................................................................................... 26
6 *McCarthy* § 31:77 .......................................................................................... 26
*AAA of N. Cal.*,
  2019 U.S. Dist. LEXIS 47394 at *81-82 ......................................................... 30

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Adaptive Marketing LLC v. Girard Gibbs LLP*,
   2009 U.S. Dist. LEXIS 131474, at *14-15 (C.D. Cal. 2009) .......................... 18

*Blau*,
   2003 U.S. Dist. LEXIS 27432 at *9 ................................................. 30

Film and Multimedia and the Law § 4:36 ........................................... 21

*Straughter v. Concord Music*,
   2020 U.S. Dist. LEXIS 220453, *14 (C.D. Cal. 2020) ..................................... 5

*Viz Commc'ns., Inc. v. Redsun*,
   2004 U.S. Dist. LEXIS 24481, at 23 (N.D. Cal. Mar. 8, 2004) ...................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.   INTRODUCTION

In the simplest terms, this is a lawsuit for copyright and trademark claims over actions which took place in the late 1980's and 1990's.  The most recent action complained of was 24 years ago (in 1999) when Bloodsport 4 was produced.  Plaintiff gave his rights to do the first Bloodsport film to Defendant's predecessor, Cannon Films.   For good measure, when another company that is also a predecessor to Defendant, Pathe Entertainment, went to do Bloodsport 2, it obtained any remaining rights held by Plaintiff.  Plaintiff had no other rights. Plaintiff believes that, just because he was hired to render services on the subsequent Bloodsport films, it somehow negates his transfer of rights.  Those subsequent services do not change the fact that he has no trademark rights in Bloodsport and he has no copyright rights in Bloodsport.  In fact, he never filed a registration with the US Copyright office for his Bloodsport script, which itself is fatal to this lawsuit.  He also never filed a trademark, and all he ever owned was a single script for the first Bloodsport, which would not have had any trademark rights under US law.

## Plaintiff owns no rights in Bloodsport

Plaintiff's basis for the claim of rights in Bloodsport is based on the life story rights of an individual named Frank Dux.  Plaintiff obtained the life story rights in 1985, 28 years ago, of Frank Dux for the purposes of making a feature film, Bloodsport, which was made, and a **remake or sequel.** The Dux life rights agreement states as follows:

---

[1] As required by the Court's rules, counsel for the parties met and conferred and agreed that as opposed to filing prohibited cross-motions for summary judgment, Plaintiff's motion would proceed first and Defendants' Opposition would also be treated as a motion for summary judgment pursuant to FRCP Rule 56(f).  (Kernan Decl., ¶ 75).

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

> 9.     Provided that [Plaintiff] shall actually produce and release [Bloodsport], then [Plaintiff] shall thereafter have the right, in perpetuity, in [Plaintiff's] sole and exclusive discretion, to remake [Bloodsport] **or** to produce one (1) sequel to [Bloodsport]. In addition, [Dux] hereby grant[s] to [Plaintiff] the irrevocable, perpetual right of first negotiation and first refusal for the rights to: produce television programs based, upon [Bloodsport] or the Story [Dux life story]; produce a second or subsequent sequel or remake of [Bloodsport]; and/or, produce any other film or program based upon [Dux's] true-life experience other than the Story.

SUF 27.

In 1986, 27 years ago, Plaintiff commissioned a screenplay based on the

Dux life story rights and sold and assigned his rights in the screenplay, the basis

of Bloodsport, to Cannon (the "Cannon Agreement").  The Cannon Agreement

states as follows:

> 2.     <u>Grant of Rights.</u> [Plaintiff] hereby irrevocably sells, grants and assigns to [Cannon], absolutely and outright, in perpetuity and throughout the universe, a license to produce one motion picture based upon the Property [Lettich Screenplay] or any part thereof (the "Picture") and customary ancillary, subsidiary and incidental rights related thereto.

SUF 28.

On November 16, 1989, Plaintiff entered into an agreement (the "Pathé

Agreement") with Cannon's successor in interest, Pathé Entertainment, Inc.

("Pathé"). SUF 36. Under the Pathé Agreement, Plaintiff sold and assigned his right

to make a Bloodsport sequel ("Bloodsport II") and other related rights to Pathé.

Plaintiff assigned his "Owned Sequel Rights" to Pathé, as well as all rights in any

film produced pursuant to the Pathé Agreement:

> 5.     <u>Grant of Rights:</u> [Plaintiff] hereby irrevocably sells, grants and assigns to [Pathé], absolutely and outright, in perpetuity and throughout the universe:
> (a)     The Owned Sequel rights; and
> (b)     All rights in any motion picture (including "Bloodsport II") produced pursuant to this Principal Agreement, including but not limited to all of the Motion Picture and Allied Rights as provided in the Standard Terms.

SUF 37.

Defendant Trans-American's predecessor Pathe Entertainment (the

predecessor to MGM) purchased all of Plaintiff's rights in Bloodsport, as

evidenced in Exhibit 4 attached to counsel for Plaintiff's declaration.  FM

2

Entertainment, Defendant Trans-American's predecessor, then purchased all of Plaintiff's rights in Bloodsport from MGM (Pathe's successor) as evidenced in Exhibit 7 attached to counsel for Plaintiff's declaration.  Defendant Trans-American was then assigned all rights in Bloodsport from FM Entertainment, as evidenced in Exhibit 9 attached to counsel for Plaintiff's declaration.  After the 1996 transfer from FM Entertainment of all of the Bloodsport rights, Defendant Trans-American was the sole owner of all rights in Bloodsport.    SUF 41 – 46.

**Plaintiff's case is a copyright case barred by the statute of limitations**

Plaintiff's case is a backdoor copyright case not labeled as such.  Plaintiff does not own the copyright in Bloodsport, as Cannon registered the copyright in the screenplay in 1986 and the film in 1988.  According to 17 U.S.C. § 411(a) "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *See also, Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019).  Plaintiff cannot assert a copyright claim as he does not own the copyright in the screenplay, and Plaintiff cannot register a copyright to pursue a copyright claim because Cannon owns the copyright.  The statute of limitations on this copyright case at the latest in 1991, 22 years ago.  Plaintiff has no case.

**Defendants properly registered the trademarks in Bloodsport**

As Defendants owned the rights to the Bloodsport movies, Defendants properly had the Bloodsport trademark filed.  In fact, someone else was trying to register a Bloodsport trademark, which would have infringed on the ability to produce a Bloodsport film.  Due to this attempted registration, Defendants registered the Bloodsport trademark.  (See Lee Declaration).  Plainly, there was no fraud on the PTO and there is no clear and convincing evidence submitted by Plaintiff of any alleged fraud on the PTO, especially as Defendants have all the rights in the Bloodsport franchise.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Plaintiff has no trademark rights or any rights in Bloodsport**

Plaintiff has no common law trademark rights in Bloodsport.  Plaintiff never used the name Bloodsport in commerce, Cannon did.  Cannon distributed the first Bloodsport film, not Plaintiff.  Additionally, Plaintiff has no ownership interest in the first Bloodsport film.  Plaintiff's entire case is based on the first Bloodsport film, which he does not own.  Nonetheless, Plaintiff cannot trademark the name of one film.  Defendants, based on the assignment of rights of Defendants' predecessors, used Bloodsport in commerce based on four films, not just one.

Finally, this lawsuit makes no sense because, aside from the multiple legal defenses and the lack of any rights, Defendants (and his predecessor companies) have not made any profits on the Bloodsport films since 1999.  Thus, the claims here fail for multiple legal reasons.  On top of all that, every cause of action in the complaint is missing at least one required element.  As such, summary judgment for the Plaintiff should be denied, and summary judgment should be granted for Defendants.

## II.  UNDISPUTED FACTS

See Kernan Declaration and Separate Statement of Undisputed Facts.

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). If the "non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "The non-moving party must show more than the mere existence of a scintilla of evidence," and in fact, "must

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* In the absence of evidence, the "moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317-18 (1986).

## IV.   ARGUMENT

### A.   Plaintiff's Complaint is Barred by the Statute of Limitations

#### 1.   Plaintiff's Complaint is Based on Ownership Rights in Copyright and is Therefore Time Barred[2]

Plaintiff's claim is time-barred by the statute of limitations.  The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).   As the Ninth Circuit has explained, claims of copyright ownership are distinct from claims of infringement and accrue only once, "when plain and express repudiation" of the supposed ownership interest "is communicated to the claimant." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).   Obtaining a copyright registration and affixing a copyright notice attributing ownership to a specific party is sufficient to communicate plain and express repudiation that any different or additional party owns rights.[3]

---

[2] Plaintiff's Conclusions of law admit on their face that this case is a copyright case. (Plaintiff's Separate Statement, Conclusions of Law, Nos. 8 – 11).  Plaintiff is attempting to manufacture a trademark case to avoid the time bar of the Copyright Act statute of limitations.

[3] *See Straughter v. Concord Music*, 2020 U.S. Dist. LEXIS 220453, *14 (C.D. Cal. 2020). Additionally, 17 USC Section 410(c) states:

"(c)In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

The court in *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) addressed for the first time in the Ninth Circuit the distinction between ownership claims and infringement claims. In upholding the trial court dismissal of the complaint based on the statute of limitations, the Ninth Circuit stated,

> Although this is an issue of first impression in our circuit, we are guided by the Second and Sixth Circuits. Our sister circuits have held that, where the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred. *See Kwan,* 634 F.3d at 229–30; *Ritchie v. Williams,* 395 F.3d 283, 288 n. 5 (6th Cir.2005); *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 389–90 (6th Cir.2007).[7] "When claims for both infringement and ownership are alleged," according to the Sixth Circuit, "the infringement claim is timely only if the corresponding ownership claim is also timely." *Roger Miller Music, Inc.,* 477 F.3d at 389–90. Or, as the Second Circuit puts it, "[w]here ... the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail." *Kwan,* 634 F.3d at 230. . . . Our sister circuits' approach makes good sense— allowing infringement claims to establish ownership where a freestanding ownership claim would be time-barred would permit plaintiffs to skirt the statute of limitations for ownership claims and lead to results that are "potentially bizarre," 3 Nimmer & Nimmer, *Nimmer on Copyright,* § 12.05[C][3].

*Id.* at 1255.

Unlike infringement claims, "ownership claims accrue only once, at the time 'when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation,' because 'an infringement occurs every time the copyrighted work is published, but creation does not.'" *Pak's Trading Eur. B.V. v. Target*, No. SA CV 18-0536-DOC (DFMx), 2018 WL 8333362, at *5 (C.D. Cal. July 5, 2018) (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369, 1371 (9th Cir. 1996)). "[A]n untimely ownership claim will bar a claim for copyright infringement where the gravamen of the

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

dispute is ownership." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1258 (9th Cir. 2013).[4]

Here, Defendant's predecessor obtained a registration from the Copyright Office for the screenplay and the Bloodsport motion picture, which both listed Defendant's predecessor as the owner.  SUF 1 and 2.  Bloodsport II was registered and listed Defendant's predecessor as the owner.  Bloodsport III was registered and listed Defendant's predecessor as the owner.  Bloodsport 4 was registered on March 25, 1999 listed Defendant Trans-American as the owner.[5]  Thus, the Plaintiff's claim accrued no later than 1988 and Plaintiff's three-year limitations period to pursue it ran no later than 1991, rendering the Plaintiff's claim at least thirty years too late.

> The Ninth Circuit has clarified the rule as follows:
> "It is inequitable to allow [someone] to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort."

*Zuill*, 80 F.3d at 1370-71.  Thus, the repudiation required to start the statute of limitations may be shown in several ways including, but not limited to: a claim of sole ownership, copyright registration, failure to credit, or failure to pay royalties.  *Zuill,* 80 F.3d at 1368; *Seven Arts*, 733 F.3d at 1257; *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000*); The Saenger Org., Inc., v. Nationwide Ins. Lic. Ass'n*, 119 F.3d 55, 66 (1st Cir. 1997); *Straughter v. Concord Music*, 2020 WL

---

[4] In addition to repudiation, at a minimum there needs to be a contractual relationship concerning the claim of ownership. *Id.* at 1256.  Paramount and Seven Arts had a contractual relationship.  *Id.*  In the case at hand, Plaintiff and Cannon had a contractual relationship as well, so the only issue is repudiation.
[5] The Bloodsport motion picture registration included the credit line "produced" by DiSalle, but the owner was identified as Cannon.  This credit clearly conveys that DiSalle was not an owner as he was a producer who received credit.  *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) ("The movie credits plainly and expressly repudiated authorship, by listing Aalmuhammed far below the more prominent names, as an 'Islamic technical consultant.'")).

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

6821313, at *4 (C.D. Cal. 2020).  Here, multiple *undisputed* factors weigh in favor of finding plain and express repudiation by Defendants' predecessors:

**First**, repudiation of Plaintiff's ownership claim is obvious from Cannon's registration of the copyright of the screenplay and film in its name alone, stating that the copyright for the screenplay was a work for hire. Courts have held that copyright registration supports a finding of express repudiation. *See Zuill*, 80 F.3d at 1368 (discussing multiple factors, including a notice of copyright placed on the work itself, as establishing plain and express repudiation); *Straughter v. Concord Music*, 2020 WL 6821313, at *4 (C.D. Cal. Oct. 13, 2020) (concluding defendants plainly and expressly repudiated plaintiffs' ownership interests when they obtained a copyright registration in the disputed work and released the work with a copyright notice); *The Saenger Org., Inc.,* 119 F.3d at 66 (explaining that an individual claiming copyright ownership had constructive notice of another individual's claim of exclusive ownership of the copyrights as of the effective date of copyright registrations).

**Second,** repudiation of Plaintiff's ownership claim is supported by the fact that Plaintiff was never credited as the owner when the film was released, as Cannon was as the registered copyright owner.  *Aalmuhammed*, 202 F.3d at 1231 (plaintiff's listing in the credits of a movie below "more prominent names" was a "plain and express repudiation" of authorship); *Silva v. Sunich*, 2006 WL 6116645, at *7 (C.D. Cal. Sept. 6, 2006). In 1988 when Bloodsport was released, Cannon openly and notoriously released the film as "Bloodsport A Cannon Film," attaching its own copyright to the film.  Cannon publicly claimed sole ownership of Bloodsport, including the screenplay.  SUF 3.

**Third,** repudiation of Plaintiff's ownership claim is supported by Plaintiff's own deposition testimony.  Plaintiff testified that Bloodsport II, III, and IV, produced by Defendants' predecessors, illegally used "elements" of his "copyrighted" work.  Yet, Plaintiff never claimed "ownership" or filed suit when

these films were released.  Plaintiff was plainly on notice and sat on his rights. SUF 4 and 5.

Taken together, it is undisputed that Defendants plainly and expressly repudiated any ownership claim by Plaintiff.

**2.** **The remaining trademark claims (except fraud on the PTO) are time barred by the statute of limitations**

Plaintiff filed this lawsuit in 2022, more than twenty years after the alleged trademark infringing acts. This action is barred by California's four-year statute of limitations set forth in *California Code of Civil Procedure* Section 343. *The Saul Zaentz Company d/b/a/ Tolkien Enterprises v. Wozniak Travel, Inc.,* 627 F. Supp. 2d 1096, 1113-14 (N.D. Cal. 2010) (J. Patel) (California's four year statute of limitations governs Lanham Act claims and claims for dilution and unfair competition).  The allegations complain about Bloodsport II, III, and IV, all of which were released in the 1990s, well beyond the four-year statute of limitations.

**B.** **Plaintiff's Claims are Barred by Estoppel**

Plaintiff knew about Cannon's use of the screenplay and copyright in the screenplay in 1988, but failed to act until March 31, 2022.  Accordingly, Plaintiff's claims are barred by the doctrine of estoppel.  The doctrine of estoppel bars copyright-related claims, eliminating all potential remedies. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc*., 2015 WL 12752881 at *6 (C.D. Cal. Aug. 27, 2015), *citing Petrella*, 572 U.S. at 684.  A defense of estoppel requires: (1) the plaintiff knew the facts, (2) the plaintiff intended that its conduct would be acted on or acted in such a way that the defendant had a right to believe it was intended, (3) the defendant was ignorant of the facts, and (4) the defendant relied to its detriment on plaintiff's conduct. *Hampton v. Paramount Pictures Corp*.,

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

279 F.2d 100, 104 (9th Cir. 1960); *Interscope Recs. v. Time Warner, Inc.*, 2010 WL 11505708, at *11 (C.D. Cal. June 28, 2010).[6]

**First**, the evidence is overwhelming and undisputed that Plaintiff knew that Cannon claimed ownership in an allegedly infringing way on the release of Bloodsport in 1988 (or at a minimum, Defendants' predecessors were doing so as late as 1999 according to Plaintiff's deposition testimony). SUF 4.

**Second**, Plaintiff took no action whatsoever to tell Defendants' predecessor companies, including Cannon, to cease their allegedly infringing activity or even notify Defendant's predecessors of his alleged rights. Defendants' predecessors had a right to believe that Plaintiff did not have any ownership claim concerning the screenplay.  Plaintiff even testified in 1997 that he had no rights in Bloodsport and had transferred all rights to Defendants' predecessor FM Entertainment.  SUF 6.  "A copyright holders' silence or inaction in the face of an infringement can give rise to an estoppel defense, particularly where such inaction is prolonged."[7]   From 1988 after the release of Bloodsport, through March 31, 2022, it is undisputed that Plaintiff took no steps to notify Cannon of his alleged rights or to object to Cannon's use of the screenplay or registration of the copyright.  Moreover, Plaintiff never registered a copyright in the screenplay, only Cannon did.

---

[6]  The rules of estoppel have equal application to the trademark claims (other than fraud on the PTO).  Marshak v. Green, 505 F. Supp. 1054, 1061, 212 U.S.P.Q. 493 (S.D. N.Y. 1981) ("Where a party, as here,... receives such benefits over a period of time, he is estopped from challenging the validity of the mark under these traditional principles.")  Here, Plaintiff obtained the benefits of the agreement where he assigned all rights (in both the Cannon and Pathe agreements) and now cannot come back over 30 years later to claim that he really did not transfer all rights.

[7] *Interscope Recs.*, 2010 WL 11505708, at *12 (C.D. Cal. June 28, 2010); *See also Hampton,* 279 F.2d at 104 ("A holding out may be accomplished by silence and inaction.");  *Carson v. Dynegy, Inc*., 344 F.3d 446, 453 (5th Cir. 2003) ("It is accepted that estoppel may be accomplished by a plaintiff's silence or inaction.").

**Third**, for over thirty-five years, Plaintiff made no attempt to inform Cannon, or any of Defendants' predecessors, of his alleged ownership in the screenplay.

**Fourth**, Defendants' predecessors detrimentally relied on Plaintiff's silence. If Defendants' predecessors had been made aware of Plaintiff's claimed competing ownership interest, Defendants would have taken action to assert their rights. Because Plaintiff failed to notify Defendants' predecessors of his alleged right for years, Defendants' predecessors continued to distribute Bloodsport and its sequels for years and thus continued to subject themselves to potential liability. Defendants' predecessors' reliance on Plaintiff's silence was thus to their detriment, as evidenced by the present lawsuit.[8]

Because Defendants satisfy each of the elements to establish an estoppel defense, Plaintiff's claims are barred and summary judgment is appropriate.[9]

### C. All claims but fraud on the PTO are barred by laches

"Laches is an equitable time limitation on a party's right to bring suit, ... resting on the maxim that 'one who seeks the help of a court of equity must not sleep on his rights.'" *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). There is a presumption that laches applies when suit is brought outside the statute of limitations. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829,

---

[8] *See Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1400 (C.D. Cal. 1990) (noting that detrimental reliance may be evidenced by the copyright infringement action itself); *Interscope Recs.*, 2010 WL 11505708, at *11 (finding the fourth element properly pled where defendants alleged that, had they known of plaintiff's objection to their use, they would have taken steps to limit or eliminate their liability).

[9] *See Hadady Corp.*, 739 F. Supp. at 1400 (granting summary judgment on plaintiff's copyright claim where defendant established that plaintiff was equitably estopped from asserting a copyright infringement claim); *Watermark Publishers v. High Tech. Sys. Inc.*, 1997 WL 717677, at *8 (S.D. Cal. Aug. 12, 1997) (same).

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

837 (9th Cir. 2002); *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 997 (9th Cir. 2006).

Plaintiff's failure to file an ownership action Bloodsport between 1988 and 2022 was unreasonable and should result in his ownership claim being barred by laches. The Ninth Circuit has recognized that "[c]laims of ownership are traditionally subject to the defense of laches." *Jackson v. Axton*, 25 F.3d 884, 887-88 (9th Cir. 1994). To establish the affirmative defense of laches, a defendant must present evidence that the plaintiff unreasonably delayed the filing of the action and that the defendant was prejudiced by the delay. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). "[A]ny delay is to be measured from the time that plaintiff knew or should have known about the potential claim at issue." *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000).

The question is when Plaintiff should have known that Cannon (Defendants' predecessor) claimed sole ownership of Bloodsport. "[T]he law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Johnston v. Standard Mining Co.,* 148 U.S. 360, 370 (1893); *see also Adidas-America, Inc., v. Payless Shoesource, Inc.,* 546 F. Supp. 2d 1029, 1069 (D. Or. 2008). It is well established that laches can bar long-dormant claims for equitable relief, such as Plaintiff's claims for declaratory relief and an injunction against Defendants. *City of Sherrill, N.Y. v. Oneida Indian Nation of New York*, 544 U.S. 197, 217 (2005). To succeed on the defense of laches, a party must show that (1) the plaintiff's delay in filing suit was unreasonable; and (2) the defendant would suffer prejudice caused by the delay if the suit were to continue. *Id.* at 838. Courts have noted that where a delay is shorter, more prejudice to the defendant is required to show laches, but where a delay is longer, less prejudice is needed. *See Miller v. Glenn Miller Prods.*, 318 F.Supp.2d 923, 944 (C.D. Cal. 2004).

Putting aside fraud on the PTO, laches has equal application to the common law trademark claims and the unfair competition claims.  Both of those claims begin upon use of the mark and have nothing to do with federal registration.   According to Plaintiff his common law trademark attached to the screenplay when he started circulating it in 1986. However, it is 37 years later, and Plaintiff now belatedly seeks to bring those claims which are barred by laches and estoppel just like the copyright claims above. *Miller v. Glenn Miller Productions, Inc.,* 454 F.3d 975, 997, 79 U.S.P.Q.2d 1545 (9th Cir. 2006) ("It is well established that laches is a valid defense to Lanham Act claims for both monetary damages and injunctive relief."). In *Miller*, the court explained that "if any part of the alleged wrongful conduct occurred outside of the limitations period, courts presume that the plaintiff's claims are barred by laches". *Id.* at 997.  Here, all of the conduct for the common law, unfair competition and declaratory relief claims happened outside the four-year statute of limitations, so laches has equal application to bar these trademark claims. *Id.*

Here, there is no question that Plaintiff has "slept on" his now-alleged rights stemming from Bloodsport I, as that film was released over 34 years ago in 1988. Similarly, Bloodsport II was released over 26 years ago in 1996. Since those two releases, two other Bloodsport films were produced and released, and the rights at issue in this case were transferred various times. Yet even with these occurrences, Plaintiff never once sought declaratory relief to "clear title" to his alleged Bloodsport rights as he does now. During this period, Plaintiff was happy to receive compensation in connection with various Bloodsport projects based on what have now been proven to be misrepresented rights. Once Defendants realized that Plaintiff actually had no rights left in the Bloodsport franchise and decided to move forward with their own Bloodsport projects without Plaintiff's involvement, Plaintiff filed suit to block Defendants' proper exercise of their extensive Bloodsport rights. Plaintiff's decades-long delay in bringing this suit therefore greatly prejudices Defendants, who have established their extensive right to proceed in producing future Bloodsport

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

projects without Plaintiff's involvement.  SUF 7 – 25.  For example, the Pathe agreement that Plaintiff claims does not grant all of his rights has standard terms which are traditionally onerous on the selling party but those standard terms have not been produced by Plaintiff and the company has long since become defunct and we cannot get the standard terms from said company.  But that is just one of a litany of prejudices here.

### D. Plaintiff Has No Rights in Or to the Bloodsport Franchise And Its Underlying Materials

#### 1. The Dux Agreement and Cannon Agreement Unambiguously Established Plaintiff's Rights, Including Plaintiff's Right to Make Either a Sequel to or Remake of Bloodsport, but Not Both

As explained above, the Dux Agreement unambiguously gave Plaintiff the right to either remake Bloodsport, which was produced under the Cannon Agreement, **or** to produce a sequel to Bloodsport, **but not to do both**.

Under the Cannon Agreement, Plaintiff transferred nearly all of his rights to Cannon with regard to the production of Bloodsport.  Plaintiff only reserved "certain remake, sequel and television program rights in the Life Story" as defined in Paragraph 9 of the Dux Agreement. SUF 27. These reserved rights were still greatly limited, as Plaintiff was required to provide Cannon with a back-to-back right of first negotiation and first refusal to acquire these reserved rights should Plaintiff attempt to assert them. SUF 30.

#### 2. Bloodsport II was Undeniably a Sequel to Bloodsport

Although Plaintiff conceded that he entered into an agreement with Pathé to produce a Bloodsport sequel, and although the successors to Pathé produced said sequel, Plaintiff now asserts that he somehow still has the right to remake Bloodsport as if Bloodsport II had not been produced. The Pathé Agreement unambiguously stated that any film produced "based upon and/or incorporating in some part the Underlying Property" would be deemed a use of the so-called "Owned Sequel Rights." SUF 37. Thus, Plaintiff, who received $100,000 for the rights conveyed

under the Pathé Agreement, agreed that Bloodsport II was a sequel to Bloodsport. After the Pathe agreement, Plaintiff had no further rights to Bloodsport as he acknowledged under penalty of perjury.

### E.  The Trademark Aspects of Plaintiff's Declaratory Relief Claim Fail as Well

#### 1.  A Claim for Declaratory Relief is Invalid as a Standalone Cause of Action

Declaratory relief is not an independent cause of action, but--as the name implies--only a remedy. In the Ninth Circuit, judgment on a substantive cause of action must give rise to the declaratory remedy sought.[10] Because Plaintiff's second, third, fourth and fifth causes of action fail as a matter of law, as discussed below, Plaintiff's first cause of action must fail.

#### 2.  Plaintiff Cannot Assert a Claim for Copyright Infringement by Way of a Claim for Declaratory Relief

The law is well settled that a copyright infringement claim requires copyright registration. 17 U.S.C. § 411(a).  Nonetheless, realizing he cannot bring a copyright claim, Plaintiff has sought to circumvent this rule by bringing a Declaratory Relief cause of action.  Plaintiff's meet and confer letter regarding his cross-motion for summary judgment on the Declaratory Relief cause of action stating that he was asserting rights under copyright law, which is impermissible.  (Kernan Decl., ¶ 48). Plaintiff's complaint alleges these same claims, and defines Plaintiff's alleged property as follows:

---

[10] *See Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (explaining that the Declaratory Judgment Act "only creates a remedy and is not an independent basis for jurisdiction" (citation omitted)); *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) ("This statute does not create new substantive rights, but merely expands the remedies available in federal courts."); *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash. 2016), aff'd, 740 F. App'x 142 (9th Cir. 2018) ("It is well established that the Declaratory Judgment Act does not create an independent cause of action." (citation and internal quotation marks omitted)).

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

> This lawsuit seeks declaratory relief as to the parties' intellectual property rights and to hold Defendants liable for willfully exploiting and encumbering rights they do not have and infringement of Plaintiff's trademark rights. Plaintiff originated and produced the iconic 1988 feature **motion picture Bloodsport based upon his original screenplay** entitled Bloodsport (the "Property")."

See Complaint ¶1 (emphasis added).

### a. **Plaintiff Has No Standing to Assert a De-Facto Copyright Claim as Plaintiff Does Not Own the Bloodsport Copyrights**

Any argument by Plaintiff that his alleged trademark rights somehow flow from the copyrights associated with Bloodsport is without merit. The U.S. Copyright Office regulations expressly exclude from copyright protection "[w]ords and short phrases such as names, **titles**, and slogans." 37 C.F.R. § 202.1 (emphasis added). Indeed, movie titles cannot be copyrighted, so Plaintiff has no copyright in the title "Bloodsport". *Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*, 707 F.3d 869, 872 (7th Cir. 2013); *see also Benay v. Warner Bros. Entertainment, Inc.* (9th Cir. 2010) 607 F.3d 620, 628 ("A title standing alone cannot be copyrighted."), overruled on other grounds by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Furthermore, Plaintiff has no ownership right in any copyrights associated with Bloodsport. Plaintiff bases virtually his entire argument on his alleged ownership of the Bloodsport screenplay, which he repeatedly refers to as "his" or "DiSalle's" screenplay. However, the screenplay copyright is registered under the name of Defendants' predecessor in interest, Cannon. SUF 1. Likewise, the copyright to the actual Bloodsport film is registered under Cannon's name. SUF 2. Both registrations are **decades** old.

Plaintiff now seeks declaratory relief as a roundabout way to infringe on Defendants' rights because he has no standing to directly sue for copyright infringement. This is improper, and if Plaintiff wants to challenge Defendants' copyrights, Plaintiff has the burden to show that Cannon's, and therefore, Defendants' copyrights are invalid. The law in the Ninth Circuit is clear:

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

> Under the copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copyright's first publication. 17 U.S.C. § 410(c); *see also North Coast*, 972 F.2d at 1033; *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3rd Cir.1990); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085–86 (9th Cir.1989). A certificate of copyright registration, therefore, "shifts to the [asserting party] the burden to prove the invalidity of the [registration holder's] copyrights." *Masquerade Novelty*, 912 F.2d at 668; *see also Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823, 832 (10th Cir.1993).

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217-8 (9th Cir. 1997).

Furthermore, "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *see Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019); *see also Le v. Huynh*, No. 23-CV-00914-SI, 2023 WL 3763801, at *2 (N.D. Cal. May 31, 2023) ("A copyright claimant must generally comply with the registration requirements of 17 U.S.C. § 411(a) before he may pursue an infringement claim in court").  Plaintiff has no copyrights concerning Bloodsport and therefore improperly seeks declaratory relief to create a copyright claim he is not legally able to file.

### b. Plaintiff's Backdoor Declaratory Relief Claim for Copyright Infringement is Preempted

Courts have granted summary judgment on various causes of action based on copyright preemption, even when those causes of action did not, on their face, look like copyright infringement claims. *See Motown Record Corp. v. George A. Hormel & Co.*, 657 F.Supp. 1236, 1240 (C.D.Cal.1987) (Intentional interference with prospective business advantage claim subsumed within Copyright Act.); *see also Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997) (Conversion claim preempted by federal copyright law because damages sought were from the unauthorized reproduction and distribution of a film); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195 (2d Cir.1983), *rev'd on other*

17

*grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (Claim for tortious interference with contractual relations preempted by the Copyright Act.).

Here, Plaintiff's declaratory relief claim seeks to enforce Plaintiff's alleged copyrights in Bloodsport, creating an improper backdoor claim for copyright infringement that must be preempted by the Copyright Act.

**F. Plaintiff Has No Evidence to Establish the Elements of His Trademark Causes of Action, Requiring Summary Judgment in Defendants' Favor on Plaintiff's Second Cause of Action for Federal Unfair Competition and Plaintiff's Fifth Cause of Action for Federal Common Law Trademark Infringement**

Unfair competition claims alleging trademark infringement are "subject to the same test" as trademark infringement claims under Section 43(a) of the Lanham Act. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 631 n.1 & 632 (9th Cir. 2008) (using the "same test" for Lanham Act infringement claim, common law unfair competition); *Adaptive Marketing LLC v. Girard Gibbs LLP*, 2009 U.S. Dist. LEXIS 131474, at *14-15 (C.D. Cal. 2009) (applying same standard for Lanham Act claims and unfair competition).[11]

To succeed on a claim under Section 43(a) of the Lanham Act, a plaintiff must "prove [1] the existence of a trademark and [2] the subsequent use by another in a manner likely to create consumer confusion." *eAcceleration Corp. v. Trend Micro, Inc,* 408 F.Supp. 2d 1110, 1114 (W.D. Wash. 2006) (Citing *Comedy III Prod., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000)). Crucially, Plaintiff must **first** establish that he has a valid, protectable interest in the BLOODSPORT trademark before he can proceed to the "likelihood of confusion" prong of the Section 43(a) analysis. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 972 (9th Cir. 2007).

---

[11] Common law trademark infringement also falls under the same legal test, as the United States Supreme Court has stated that "[w]thout federal registration, a valid trademark may still be used in commerce … [a]nd an unregistered trademark can be … enforceable under § 43(a) of the Lanham Act, which creates a federal cause of action for trademark infringement." *Matal v. Tam*, 582 U.S. 218, 225 (2017).

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

18

### 1.  **Defendants, not Plaintiff, have Priority of Use**

The Ninth Circuit has held that "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark **in the sale of goods or services**." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (emphasis added). Although Plaintiff's Corrected Motion is riddled with conclusory and unsubstantiated statements referring to Bloodsport as "DiSalle's Bloodsport film," repeatedly stating that the film was Plaintiff's does not actually make it so, and is certainly not enough to survive a motion for summary judgment.

Furthermore, although it is true that Plaintiff received a "Produced By" credit on Bloodsport, such a credit does not lead to the conclusion that Plaintiff was the undisputed originator of Bloodsport. Indeed, Plaintiff provides no case law supporting his assertion that his "Produced by" credit can be used to reach a legal conclusion regarding his alleged trademark right and to establish priority of use. Following Plaintiff's argument to its logical conclusion, anyone else who played a role in the film's development would arguably have a common law trademark right in the film. This is an absurd conclusion that would lead to the destruction of trademark rights in the film industry. However, even if Plaintiff's flawed "credits" argument is applied here, Cannon (and therefore, Defendants) would have a far stronger claim to the Bloodsport trademark, as Cannon's logo and name appear multiple times in the film's beginning and ending credits. Indeed, one of the final frames of the end credits is Cannon's logo bounded by the words "BLOODSPORT: A CANNON FILM." Even other individuals involved in the film, such as director Newt Arnold or lead actor Jean-Claude Van Damme would have stronger claims under Plaintiff's flawed "credits" argument, as their names appear more prominently and more often in the credits than Plaintiff's does. These individuals have no legal or logical basis to claim origination or priority of use via their credits, and neither does Plaintiff.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Only Cannon, by virtue of the extensive rights granted to it under the Cannon Agreement, can claim priority of use in commerce based on the development of Bloodsport. These rights extend to Defendants by law, as it is well established that prior use by a trademark holder can properly be attributed to its successors-in-interest without negatively affecting the trademark rights established by the predecessor. *See Yedi, Inc. v. Universal Connect Wholesale, LLC*, No. 222CV02202RGKAGRX, 2022 WL 3636123, at *3 (C.D. Cal. July 19, 2022) ("[a corporation] may also "establish priority on the basis of prior use of a ... mark by a predecessor-in-interest."); *see also Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 41 USPQ2d 1369, 1372 (Fed. Cir. 1997) (Board correctly found that petitioner's predecessor-in-interest used the mark before respondent's predecessor-in-interest); *W. Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1662-63 (Fed. Cir. 1994) (TTAB erred in ignoring evidence of prior use by interrelated corporate, business, and personal "alter egos" operating under the mark).

Furthermore, Defendants' properly registered BLOODSPORT trademarks give Defendants many legal benefits and protections. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2297 (2019); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015). Indeed, Defendants' trademark registrations constitute "prima facie evidence of the validity of the registered mark and of the registration of the mark, of [Defendants'] ownership of the mark, and of [Defendants'] exclusive right to use the registered mark in commerce." 15 U.S.C.A. § 1115(a). While Plaintiff relies on conclusory statements with no evidentiary support to allege a non-existent trademark right, Defendants' have provided prima facie evidence of their ownership and exclusive right to use their registered BLOODSPORT trademarks in commerce. This prima facie evidence is supported by Defendants' predecessors-in-interest's actual use of the BLOODSPORT marks for decades through the development and distribution of four Bloodsport films. Plaintiff provides no substantive evidence to support his assertion of an alleged right in the BLOODSPORT trademark or his

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

20

alleged priority of use, nor does Plaintiff provide any evidence to rebut Defendants' prima facie evidence, so Plaintiff fails on the first prong of the Section 43(a) analysis.

### 2. Plaintiff's Repeated Assertion that Defendants had "No Involvement" in Bloodsport, Bloodsport II, and Bloodsport III is Misleading and Misinterprets the Law Regarding Secondary Meaning

"[T]he title of a film may receive trademark protection only upon a showing that the title has acquired secondary meaning." James Sammataro, Film and Multimedia and the Law § 4:36, "Trademark law and movie titles" (2022 update), citing *Warner Bros. Entertainment, Inc. v. Global Asylum, Inc*., 544 Fed. Appx. 683, 41 Media L. Rep. (BNA) 2681 (9th Cir. 2013) (finding that the mark "Hobbit" is fanciful or arbitrary in the context of promotional material but looking to whether it has acquired secondary meaning when considering whether the movie title "The Hobbit: An Unexpected Journey" has protection).  That treatise further explains: "A film title acquires secondary meaning when the title becomes so well known that the public associates it with a particular individual's work." James Sammataro, Film and Multimedia and the Law § 4:36, "Trademark law and movie titles" (2022 update).

Although it is true that a showing of secondary meaning requires "proof that the public associates the movie title with a single source, even if that source is anonymous," Plaintiff's emphasis on the phrase "single source" mischaracterizes the law. *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887 (9th Cir. 1996); *see also* 15 U.S.C. § 1127. Plaintiff uses *Paramount Pictures Corp. v. Dorney Park Coaster Co.* as an example case, which states that secondary meaning would be established if Paramount could show "that the public associates the words Top Gun with its motion picture." 698 F. Supp. 1274, 1277 (E.D. Pa. 1988). Yet Plaintiff's repeated assertions that Defendants had "no involvement" in the first three Bloodsport films and therefore did not develop so-called "single source identification" mischaracterizes the law Plaintiff relies on.

Although Defendants do not dispute that **their** BLOODSPORT trademark has acquired secondary meaning because the word "Bloodsport" has come to be

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

MEMORANDUM OF POINTS AND AUTHORITIES

associated with the films Defendants and their predecessors-in-interest produced (just like the words "top" and "gun" became associated with Paramount's film "Top Gun"), Plaintiff's assertion that Defendants' have no trademark rights because they "had no involvement" in the first three Bloodsport films has no legal basis. As discussed above, Trans-American's various predecessors-in-interest, including Cannon, Pathé, and FM Entertainment, all cultivated consumer goodwill and recognition in the BLOODSPORT trademark which Trans-American benefited from and relied on in its proper registration of its BLOODSPORT trademarks.

### 3. **Because Defendants Hold the Common Law and Statutory Rights in the BLOODSPORT Trademark, Any Use of the BLOODSPORT Trademark by Plaintiff to Make a Film Would Actually Cause a High Likelihood of Confusion with Defendants' BLOODSPORT Trademark**

Plaintiff claims that Defendants' proper use of its BLOODSPORT trademark would somehow cause confusion with Plaintiff's alleged trademark. However, because Plaintiff has failed to establish any legitimate trademark rights under the first prong of the Section 43(a) analysis, Plaintiff cannot prevailSUFon the likelihood of confusion. *See Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F.Supp.2d 1155, 1168 (C.D. Cal. 2009), aff'd, 636 F.3d 1115 (9th Cir. 2011) (District Court did not address issue of likelihood of confusion when plaintiff failed to submit evidence sufficient to create a triable issue of fact regarding ownership of common law trademark rights).

In fact, any use of the Defendants' BLOODSPORT trademarks by Plaintiff would lead to a likelihood of confusion to **Defendants'** detriment, not vice versa. The Ninth Circuit uses eight *Sleekcraft* factors to assess likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. 4 *McCarthy* § 24:39 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). Two particularly probative factors are the similarity of the marks and the proximity of

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

the goods. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017).

The Court can determine, via summary judgment, that there is no need for a jury trial because the party alleging likely confusion has produced no evidence that could possibly support a factual finding of likelihood of confusion as to the source of goods.  In fact, the Ninth Circuit has consistently held that, where, as here, there is no admissible evidence to establish likelihood of confusion summary judgment should be granted.  *Applied Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 85 U.S.P.Q.2d 1527 (9th Cir. 2007) (Where trademark registrant failed to produce any admissible evidence tending to show a likelihood of confusion, summary dismissal was proper.). It is important to note, when analyzing this lack of evidence, that the test for likelihood of confusion as to source requires the evidence show the confusion as to the source is probable, not just possible.[12]

Here, Plaintiff claims to have rights in the BLOODSPORT trademark derived from the Bloodsport screenplay and film. However, as discussed above, these rights are owned by Defendants through their proper trademark registrations and under common law. Therefore, Plaintiff's alleged trademark is virtually identical to Defendants' owned BLOODSPORT marks and falls under the same type of goods and services. Based on these factors alone, the Court can find a high likelihood of confusion between Defendants' established BLOODSPORT trademark and Plaintiff's alleged trademark (if he were to use it to produce a Bloodsport film). *Brookfield*

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

---

[12] *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 2 U.S.P.Q.2d 1204 (9th Cir. 1987) ("Likelihood of confusion requires that confusion be probable, not simply a possibility."); *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1209, 103 U.S.P.Q.2d 1161 (9th Cir. 2012) ("To succeed, a plaintiff must show more than simply a possibility of such confusion."); *Multi Time Machine, Inc. v. Amazon.com, Inc.,* 804 F.3d 930, 938, 116 U.S.P.Q.2d 1583 (9th Cir. 2015) ("To establish likelihood of confusion, [plaintiff] MTM must show that confusion is likely, not just possible." Affirmed a summary dismissal because there was no triable issue of fact that confusion could be likely.)

*Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.").

Further analysis of the *Sleekcraft* factors is not necessary at this point, as Plaintiff has not yet attempted to use Defendants' BLOODSPORT mark to produce a Bloodsport film and Defendants are not currently litigating a trademark infringement claim against Plaintiff. However, the point still stands that if Plaintiff were to use Defendants' BLOODSPORT trademarks to make such a film, it would be a "slam-dunk" case of likelihood of confusion, and Plaintiff would be directly infringing on Defendants' trademark rights. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017).

### 4.   Plaintiff Has Provided No Evidence of Damages or of Lost Goodwill in Relation to His Trademark Causes of Action

Plaintiff's complaint requests damages, including enhanced and exemplary damages, on his trademark causes of action. "When seeking damages, a plaintiff must prove both the fact and the amount of damage." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620 (9th Cir. 1993) (internal quotations omitted). Damages in an action for trademark infringement "are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). Where a plaintiff fails to provide evidence of damages for trademark infringement, "summary adjudication that Plaintiff has suffered no lost profits as a result of Defendant's alleged infringement," and "summary adjudication that Plaintiff cannot prove the monetary value of any alleged lost goodwill" are both appropriate. *Edge Games, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 3498607, at *6 (C.D. Cal. June 2, 2015).

Here, Plaintiff has identified no damages in support of his trademark claims and has provided no evidence that he has been damaged in any way by Defendants'

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

actions. Specifically, Plaintiff has failed to provide any expert opinion or other such evidence to quantify his alleged damages and lost goodwill. Plaintiff cannot rely solely on conclusory statements with no factual support as "proof" that he has been damaged. Therefore, the Court should grant summary adjudication in favor of Defendants on the issue of Plaintiff's alleged damages and lost goodwill.

### G. **Plaintiff Has No Evidence, Let Alone Clear and Convincing Evidence, to Establish a Claim for Federal Fraudulent Trademark Registration**

The Ninth Circuit has established a five-part test to be used to determine whether a party has committed fraud against the PTO in procuring a federal trademark registration: (1) a false representation regarding a material fact, (2) the registrant's knowledge or belief that the representation is false, (3) the intent to induce reliance upon the misrepresentation, (4) reasonable reliance thereon, and (5) damages proximately resulting from the reliance. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990); *Levi Strauss & Co. v. Esprit US Distrib. Ltd.*, 588 F. Supp. 2d 1076, 1083–84 (N.D. Cal. 2008). **All five of these elements must be proven by clear and convincing evidence**. *See In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009) (requiring clear and convincing evidence of subjective intent); *Viz Commc'ns., Inc. v. Redsun*, 2004 U.S. Dist. LEXIS 24481, at 23 (N.D. Cal. Mar. 8, 2004) (requiring clear and convincing evidence of knowledge); *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1031 (N.D. Cal. 2003) (requiring clear and convincing evidence of a false statement made with the intent to deceive).

The requirement of clear and convincing evidence is a high bar for Plaintiff to overcome, as the Federal Circuit Court of Appeals held in its controlling decision on this issue:

> The very nature of the charge of fraud (on the PTO) requires that it be proven "to the hilt" with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party.

*In Re Bose Corp.*, 580 F.3d at 1243 (citing and quoting *Smith Int'l Inc. v. Olin Corp.*,

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

209 USPQ 1033, 1044 (T.T.A.B. 1981)); *See also, L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1351 (Fed. Cir. 1999); *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1234 (C.D. Cal. 2007) (fraud in procurement defense is "disfavored," and carries a "heavy" burden of proof). As a result, "fraud in obtaining or maintaining trademark registration, though it is often alleged, is seldom proven." 6 *McCarthy* § 31:68. Specifically, Plaintiff's allegation of Defendants' failure to disclose Plaintiff's alleged right to use the BLOODSPORT trademark is "a serious charge which is not easily proven." 6 *McCarthy* § 31:77.

### 1. <u>Plaintiff Has No Evidence That Defendants' Trademark Applications Contain a False Statement of Material Fact</u>

Plaintiff has failed to present *any* evidence that the various applications relating to the BLOODSPORT mark contained any false statement at all. In his Motion, Plaintiff makes the conclusory allegation that "Defendants committed fraud on the USPTO through numerous false representations and intentional omissions." [Plaintiff's Corrected Motion § IV.D Page 28]. However, this conclusion is based on Plaintiff's unproven assertion that he has lingering rights in the BLOODSPORT trademark. Plaintiff has not provided clear and convincing evidence that he had any prior rights in the BLOODSPORT trademark, because as discussed above, Plaintiff has no current rights in the BLOODSPORT franchise and long ago relinquished any rights he previously held. Furthermore, in her declaration, Teresa Lee, who was the filing attorney for all of Defendants' BLOODSPORT trademark registrations, attests to the fact that she was diligent in her work regarding the BLOODSPORT trademark applications. See Lee Decl. Plaintiff does not have clear and convincing evidence that Defendants' trademark applications contained any false statements of material fact.

### 2. <u>Plaintiff Cannot Show by Clear and Convincing Evidence that Defendants Knowingly Made a False Statement of Material Fact to the PTO</u>

A false statement alone is not enough to merit the cancelation of a trademark.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

*L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1351 (Fed. Cir. 1999) ("Merely making a false statement is not sufficient to cancel a mark."). The false statement must be made knowingly. *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) ("[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO.").

As discussed above, Plaintiff has failed to provide any evidence, let alone clear and convincing evidence, of false statements in Defendants' trademark applications aside from conclusory and unsubstantiated statements. Plaintiff does not have clear and convincing evidence that Defendants and Ms. Lee knowingly made a false statement of material fact to the PTO.

### 3. <u>Plaintiff Cannot Show by Clear and Convincing Evidence that Defendants Had the Required Intent to Defraud the PTO</u>

Fraud requires a showing of subjective intent to defraud. *See, e.g.*, *In re Bose Corp.*, 580 F.3d at 1243 ("absent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation"); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001) (fraud only if party "acted with scienter"). The very allegation Ms. Lee acted with such intent on behalf of Defendants, in other words intending to deceive her former colleagues at the institution where Ms. Lee launched her career—is without evidence and false.

The declaration a trademark applicant must sign requires that the declarant state "to the best of [**his**] **knowledge and belief** no other person, firm, corporation, or association has the right to use said mark in commerce." Lee Decl. ¶ X Exhibit E (emphasis added). The statement questions the declarant's subjective, "honestly held, good faith **belief**," therefore making it "extremely difficult to prove." *Woodstock's Enterprises Inc. (California) v. Woodstock's Enterprises Inc. (Oregon)*, 43 U.S.P.Q.2d 1440 (T.T.A.B. 1997), aff'd, 152 F.3d 942 (Fed. Cir. 1998). It is well

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

established that declarations in trademark applications "require the statement of **beliefs** about exclusive rights, not their actual possession." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 5797826, at *6 (S.D. Cal. 2020) (quoting *American Sec. Bank v. American Sec. & Trust Co.,* 571 F.2d 564, 568 (C.C.P.A.1978)) (emphasis added). It is not fraud if a "false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *In re Bose*, 580 F.3d at 1246.

As is made plain by the contents of this brief, Defendants' have an honestly held, good faith belief in their exclusive rights in the BLOODSPORT trademark. A conclusory allegation by Plaintiff is not nearly enough evidence to meet the "clear and convincing" requirement, as "an applicant that **believes** its right to register a mark is superior to that of another user of the same or similar mark **will not be held to have committed fraud** by signing an application with the statutorily prescribed ownership statement. *Kelly Services Inc. v. Greene's Temporaries Inc.*, 25 U.S.P.Q.2d 1460, 1463, 1992 WL 430461 (T.T.A.B. 1992).

**4.   Plaintiff Cannot Show by Clear and Convincing Evidence that He Was Damaged in Any Way by Defendants' Registrations of the BLOODSPORT Trademark**

As discussed in relation to Plaintiff's trademark causes of action, "when seeking damages, a plaintiff must prove both the fact and the amount of damage." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620 (9th Cir. 1993) (internal quotations omitted). Just as he failed to do with his trademark causes of action, Plaintiff has provided no evidence of damages to support his claim of fraud on the PTO. Plaintiff cannot rely solely on conclusory statements with no factual support as "proof" that he has been damaged.

Plaintiff cites *Amusement Art, LLC v. Life is Beautiful, LLC*, No. 14-cv-08290, 2016 WL 6998566, at *5 (C.D. Cal. Nov. 29, 2016) as a comparable case to show that Plaintiff experienced "significant damage" due to Defendants' trademark registrations. However, the defendants in *Amusement Art* did not dispute that they

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

made false statements and that the PTO relied on these statements, therefore requiring no evidentiary showing by the plaintiff on these elements to be granted summary judgment. *Id.* at *5. In contrast, Defendants here have shown that they properly applied for and registered their BLOODSPORT trademarks based on Defendants' and their predecessors in interest's production, development, and distribution of Bloodsports I-IV.

### H. <u>Plaintiff Has No Evidence to Establish the Elements of Federal Trademark Dilution, Requiring Summary Judgment in Defendants' Favor on Plaintiff's Fourth Cause of Action for Federal Trademark Dilution</u>

A trademark holder claiming trademark dilution must show the following four elements: (1) <u>the mark is famous</u>; (2) the defendant is making use of the mark in commerce; (3) the defendant's use of the mark began after the mark became famous; and (4) <u>the likelihood of dilution</u>. *Visa Int'l Serv. Assoc., v. JSL Corp.*, 590 F. Supp. 2d 1306, 1314 (D. Nev. 2008). The first and fourth elements generally require expert testimony or similar testimony, none of which were presented by Plaintiff. Thus, the dilution claim fails on two more grounds that two elements are missing.

### 1. Plaintiff has no evidence the mark is famous

The Plaintiff must show that the mark is "truly famous before a court will afford the owner of the mark the vast protections of the FTDA." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004). In order for a mark to be "famous," it must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."[13] Courts have limited famous marks to those that receive massive

_____

[13] 15 U.S.C. § 1125(c)(2)(A) (emphasis added). The TDRA outlines four factors that a court may consider to determine whether a mark qualifies as "famous" under the statute: (1) the "duration, extent, and geographic reach of advertising and publicity of the mark;" (2) the "amount, volume, and geographic extent of sales of goods and services offered under the mark;" (3) the "extent of actual recognition of the mark;" and (4) whether "the mark was registered." *Id.*

29

advertising budgets, which generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public. *See Bd. of Regents, Univ. of Texas Sys. v. KST Elec. Ltd.*, 550 F.Supp.2d 657, 679 (W.D. Tex. 2008) ("One of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like.")

Here, there is no evidence in this case to meet this test. Plaintiff has presented no evidence of any kind in this case to show the trademark is famous, to wit, a household name to the "general consuming public of the United States." Plaintiff's motion for summary judgment has only the testimony of his attorney, and Plaintiff has offered no evidence in written discovery or his deposition to meet this test.  In every case located on this issue, expert testimony was submitted in conjunction with surveys of the public to establish this element.  Here, no surveys were done and there is no expert testimony.  There is simply no evidence to establish the mark is famous, as required.  As such, summary judgment or adjudication should be granted on this claim.

**2.  There is also no evidence for likelihood of dilution**

The Plaintiff here has not offered any evidence as to the likelihood of dilution.  Again, no expert testimony, including surveys, has been presented and this required element cannot be established.  *Visa Int'l Serv. Assoc., v. JSL Corp.*, 590 F. Supp. 2d at 1314.  As such, summary adjudication or summary judgment should be entered on that ground as well.

**I.  Plaintiff's common law trademark, unfair competition and dilution all fail for the additional reason that no damages can be shown and Plaintiff is not entitled to injunctive relief**

Courts frequently grant summary judgment on damages in infringement cases where damages are unproven, remote, or speculative. See id.; *M2 Software, Inc. v. Viacom, Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007); *AAA of N. Cal.*, 2019 U.S. Dist. LEXIS 47394 at *81-82; *Blau*, 2003 U.S. Dist. LEXIS 27432 at *9.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**MEMORANDUM OF POINTS AND AUTHORITIES**

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

In discovery Plaintiff failed to identify *any* evidence of damages, on any theory. He admitted he has no evidence of a single lost sale of its services, and it has not identified any expert witness. SUF 55.  Nor can Plaintiff seek disgorgement of Defendant's profits; disgorgement is only a remedy for *willful* infringement. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017).   Moreover, Defendants have no profits from the use of the mark.  SUF 54.  Thus, Plaintiff produced no evidence in discovery of that he lost monies due to the use of the mark, Defendant has not made any profits and there is no licensing history or any expert to establish some royalty (both of which are required).  As such, there is no basis for any claim of damages.

Nor is Plaintiff entitled to any injunctive relief. To obtain a permanent injunction, Plaintiff must prove, among other things, irreparable harm. Such harm *cannot* be presumed even if a likelihood of confusion is shown (which has not been shown here). *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249-51 (9th Cir. 2013).   There was no evidence at all during discovery of any irreparable harm.  Of course, as noted above, the delay here of many, many years also negates any possible claim of irreparable harm.

Plaintiff has no evidence of *any* harm, much less irreparable harm. He has offered no proof of loss of business, loss of customer goodwill, or any other actual injury caused to Plaintiff by Defendant's use of the mark (which Defendant actually owns).

Additionally, delay prevents the required irreparable injury necessary for injunctive relief.  *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102, 73 U.S.P.Q.2d 1258, 1267 (9th Cir. 2004) (The delay means Plaintiff is estopped or barred by laches from claiming injunctive relief).  Plaintiff brought this suit after nearly ten years of use of the mark "Domino".  A trademark owner that strongly believed his customers were being deceived would hardly have remained idle

31

for such an extended period of time.  *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 205 U.S.P.Q. 969 (5th Cir. 1980), cert. denied, 449 U.S. 899, 66 L. Ed. 2d 129, 101 S. Ct. 268, 208 U.S.P.Q. 464 (1980) (judgment for plaintiff reversed).  Here, Plaintiff unreasonably delayed for decades precluding injunctive relief.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, summary judgment and/or partial summary judgment should be granted in favor of Defendants on all of Plaintiff's causes of action, and Plaintiff's action should be dismissed with prejudice.


Dated: November 10, 2023                THE KERNAN LAW FIRM


By:___/s/ *S. Michael Kernan*__
S. Michael Kernan
Attorney for Defendants
Alberto Lensi and Trans-American
Films International Corporation

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

## **CERTIFICATION OF WORD COUNT**

I HEREBY CERTIFY that this brief contains less than 10,000 words, which complies with the word limit set by the Court's Order dated October 25, 2023.  Counsel relies on the word count of the word processing program used to prepare this brief.

Dated: November 10, 2023                    THE KERNAN LAW FIRM


By:___/s/ *S. Michael Kernan*__
                                                            S. Michael Kernan
                                                            Attorney for Defendants
                                                            Alberto Lensi and Trans-American
                                                            Films International Corporation

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

MEMORANDUM OF POINTS AND AUTHORITIES

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

3

4

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 9663 Santa Monica Boulevard, Suite 450, Beverly Hills, California 90210.

5

On November 10, 2023, I served the foregoing document(s) described as:

6

7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP RULE 56(f) AND THE PARTIES' AGREEMENT**

8

9

10

on the interested parties to this action as follows:

11

X        (BY ECF SERVICE) I caused such documents to be delivered via electronic ECF through the Court's system to counsel as follows;

12

13

MarcToberoff,
mtoberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265

14

15

16

17

X        (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States that the above is true and correct.

18

19

Executed November 10, 2023, at Los Angeles, California.

20

21

            /s/  R. Paul Katrinak
                R. Paul Katrinak

22

23

24

25

26

27

28

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777