Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DISALLE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> ALBERTO LENSI, an individual; TRANS-AMERICAN FILMS INTERNATIONAL CORPORATION, a Delaware corporation, and DOES 1-10, <br><br> Defendants. | Case No. 22-cv-02152-SSS-PVCx <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE A SUR-REPLY AND RESPONSE TO SUR-REPLY** <br><br> Hearing Date: December 15, 2023 <br> Time: 2:00 pm <br> Judge: Hon. Sunshine S. Sykes <br><br> Oral Argument Requested <br><br> [*Filed with Declaration of Marc Toberoff III*] |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...............................................................................................1

II.  LEGAL STANDARD .........................................................................................2

III. ARGUMENT......................................................................................................3

    A.   Plaintiff's Reply Stayed Within the Bounds of Responding to Defendants' Opposition and Did Not Make "New" Arguments.......3

    B.   Defendants Repeat Arguments in Their Opposition .........................5

    C.   Plaintiffs Appropriately Cited Record Evidence to Rebut Defendants' Erroneous Arguments......................................5

    D.   Defendants' Sur-Reply Improperly Raises New Arguments.............5

    E.   Defendants Misrepresent the Parties' Agreement Re: Plaintiff's Motion for Summary Judgment..................................6

    F.   Defendants' Argument Re: Damages is Misguided...........................6

    G.   Defendants' Conclusory Arguments Re: Statute of Limitations, Laches and Estoppel Fail to Address Plaintiff's Arguments and the Governing Legal Standards......................................................8

    H.   Defendants' Conclusory Denials Do Nothing to Fix Their Serious Chain-of-Title Problems Based on the Contracts They Placed in the Record .......................................11

    I.   Defendants Do Not Resuscitate Their Life Story Argument ...........14

    J.   Plaintiffs Presented Ample Evidence Pointing to the Invalidity of Defendants' Trademark Registrations.........................16

    K.   Defendants Have Not Rebutted Their Statutory Abandonment of TFI's Trademark Registrations............................18

## **TABLE OF AUTHORITIES**

**Cases**

**Pages**

*Afifeh v. Ahmadabadi*,
   No. CV 22-0928, 2022 WL 3016147 (C.D. Cal. July 5, 2022) ........................4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................14

*Applied Materials, Inc. v. Demaray LLC*,
   No. CV 20-5676, 2020 WL 8515132 (N.D. Cal. Dec. 16, 2020) .................. 4-5

*Arceo v. Ardent Mills, LLC*,
   No. CV 23-1146, 2023 WL 5096332 (C.D. Cal. Aug. 9, 2023) ......................3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................14

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
   666 F.2d 393 (9th Cir. 1982)..........................................................................7

*Chloe SAS v. Sawabeh Info. Servs. Co.*,
   No. CV 11-4147, 2015 WL 12734005 (C.D. Cal. June 3, 2015)......................5

*CliniComp Int'l, Inc. v. Cerner Corp.*,
   No. CV 17-2479, 2022 WL 16985003 (S.D. Cal. Nov. 15, 2022) ..............5, 15

*De Havilland v. FXNetworks, LLC*,
   21 Cal.App.5th 845 (2018)...................................................................... 14-15

*Dora v. Frontline Video, Inc.*,
   15 Cal.App.4th 536 (1993).............................................................................15

*Eisen v. Day*,
   No. CV 21-5349, 2023 WL 7284149 (N.D. Cal. Nov. 2, 2023).......................9

*Farmer v. Barkbox, Inc.*,
   No. CV 22-1574, 2023 WL 3149278 (C.D. Cal. Apr. 11, 2023)......................4

ii

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*FN Cellars, LLC v. Union Wine Co.,*
  No. CV 15-2301, 2015 WL 5138173 (N.D. Cal. Sept. 1, 2015).........................7

*Fuji Med. Instruments Mfg. Co., Ltd. v. Am. Crocodile Int'l Grp., Inc.,*
  2021 WL 3286400 (T.T.A.B. July 28, 2021)......................................................17

*Garcia v. Biter,*
  195 F. Supp. 3d 1131 (E.D. Cal. 2016).................................................................3

*Gionfriddo v. Major League Baseball,*
  94 Cal.App.4th 400 (2001)..................................................................................15

*Hampton v. Paramount Pictures Corp.,*
  279 F.2d 100 (9th Cir. 1960)......................................................................... 10-11

*Harjo v. Pro Football, Inc.,*
  30 USPQ.2d 1828 (TTAB 1994).........................................................................10

*Incredible Features, Inc. v. Backchina, LLC,*
  No. CV 20-0943, 2021 WL 6337194 (C.D. Cal. Dec. 16, 2021) ....................18

*Khachatryan v. Pompeo,*
  No. CV 18-1358, 2018 WL 6190591 (C.D. Cal. June 8, 2018)..........................5

*Marketquest Grp., Inc. v. BIC Corp.,*
  316 F. Supp. 3d 1234 (S.D. Cal. 2018)...............................................................10

*Markson v. CRST Int'l, Inc.,*
  No. CV 17-1261, 2022 WL 790960 (C.D. Cal. Feb. 24, 2022)..........................4

*Mohandas v. Wells Fargo Bank, N.A.,*
  No. LA CV 21-3349, 2023 WL 5506004 (C.D. Cal. July 13, 2023).................3

*Mosaic Brands, Inc. v. Ridge Wallet LLC,*
  No. CV 20-4556, 2021 WL 4535351 (C.D. Cal. Aug. 5, 2021) .......................18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*Nguyen v. BMW of N. Am., LLC,*
No. CV 20-2432, 2022 WL 102203 (S.D. Cal. Jan. 11, 2022) .........................1

*On Site Energy Co. v. MTU Onsite Energy Corp.,*
No. CV 10-1671, 2013 WL 3990919 (E.D.N.Y. 2013) ............................ 17-18

*Pac. Coast Fed'n Fishermen's Assoc. v. Glaser,*
945 F.3d 1076 (9th Cir. 2019)..................................................... 18-19

*Rhoades v. Avon Prods., Inc.,*
504 F.3d 1151 (9th Cir. 2007).........................................................7

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union,*
65 F.4th 1012 (9th Cir. 2023)....................................................... 6-7

*Sarver v. Chartier,*
813 F.3d 891 (9th Cir. 2016) ....................................................... 15-16

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC,*
733 F.3d 1251 (9th Cir. 2013).........................................................9

*Shaw v. AMN Healthcare, Inc.,*
326 F.R.D. 247 (N.D. Cal. 2018) ......................................................5

*Sims v. Paramount Gold & Silver Corp.,*
No. CV 10-0356, 2010 WL 5364783 (D. Ariz. Dec. 21, 2010)..................... 2-3

*Sound of Color, LLC v. Smith,*
No. CV 22-1508, 2023 WL 5667573 (C.D. Cal. July 11, 2023) ...................2, 4

*Terrell v. Contra Costa Cnty.,*
232 Fed. Appx. 626 (9th Cir. Apr. 16, 2007)...........................................5

*Tokidoki, LLC v. Fortune Dynamic, Inc.,*
No. CV 07-1923, 2009 WL 2366439 (C.D. Cal. July 28, 2009) .....................17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*Zacchini v. Scripps-Howard Broadcasting Co.*,
   433 U.S. 562 (1977) ...................................................................................16

*Zuill v. Shanahan*,
   80 F.3d 1366 (9th Cir. 1996)........................................................................9


**Statutes, Rules and Regulations**

15 U.S.C. § 1064................................................................................ *Passim*

17 U.S.C. § 507............................................................................................9

28 U.S.C. § 2201........................................................................................10

C.D. Cal. L.R. 7-10 .....................................................................................2

Cal. Civ. Code § 3344................................................................................15


**Other Authorities**

Mark S. Lee, *Entertainment & Intellectual Property Law* § 13:31 (2023) .........14

2 J. Thomas McCarthy, *The Rights of Publicity & Privacy*
   § 8:64 (2d ed. 2023 rev. ed.)......................................................................15

5 J. Thomas McCarthy, *McCarthy on Trademarks and
   Unfair Competition* (5th ed. 2023 rev. ed.)

   § 28:20 .....................................................................................................14

   § 30:110 ......................................................................................................7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

## I.    **INTRODUCTION**

Defendants Alberto Lensi ("Lensi") and Trans-American Films International Corporation's ("TFI") Motion for Leave to File a Sur-Reply (Dkt. 83) ("Motion for Leave") and its Sur-Reply (Dkt. 83-1) are nothing more than an attempt by Defendants to get a "second bite at the apple" and "supplement its *own* [] brief." *Nguyen v. BMW of N. Am., LLC*, No. CV 20-2432 JLS (BLM), 2022 WL 102203, at *2 (S.D. Cal. Jan. 11, 2022) (emphasis in original). Defendants' Sur-Reply once again flouts this Court's explicit rules governing motions for summary judgment and is wholly unwarranted. That is in addition to Defendants *far exceeding* the word limitation in their Opposition by filing an extra nearly 7,000-word brief in the guise of an attorney's declaration replete with legal argument. *See id*. at *2 n.1 (denying leave to file sur-reply and "not[ing] that Defendant's original [] brief exceeded the ten-page limit[.]").

Plaintiff Mark DiSalle's ("DiSalle") Reply in Support of its Motion for Summary Judgment (ECF No. ("Dkt.") 82, "Reply") argued well within the bounds of a reply to Defendant's Opposition (Dkt. 79) and did not raise "new arguments." That this is an unfounded excuse used by Defendants to file an impermissible sur-reply is evidenced by the fact that most of their Sur-Reply is spent rearguing the same things argued in their Opposition. *See* Dkt. 83-1 at 1 ("Defendants also reply, as generally permitted…"). Tellingly, of the six *sections in their Sur-Reply only the last "sixth section" purports to address* supposed "new arguments" *Id*. ("The sixth section raises the new issues addressed by Plaintiff").

Plaintiff has abided by this Court's explicit rules, Defendants must be held to the same standard. In the event, however, that Defendants' Sur-Reply is permitted, Plaintiff respectfully asks that his response in Sections III. B.-K. below to Defendants' Sur-Reply be considered as well. Even with its Sur-Reply, Defendants have still failed to adduce admissible evidence (1) curing the *four*

1

major deficiencies in their chain-of-title to *any* "Bloodsport" rights, shown by the record evidence or (2) to defend their repeated sworn misrepresentations to the USPTO to secure trademark registrations that "no other person, firm or corporation … has the right to use the mark in commerce [except TFI]" when Defendants knew full well that MGM owns and distributes the 1988 *Bloodsport* film bearing the mark. *See e.g.*, Dkt. 79-51 at 6; Dkt. 79-70 at 9; Plaintiff's Statement of Undisputed Facts ("SUF") 45. As Defendants have adduced zero admissible evidence rectifying these major problems, each and/or both mandate declaratory relief in Plaintiff's favor and cancellation of TFI's illicit trademark registrations and applications. Such cancellation is in no way dependent on a finding that Plaintiff is entitled to a common-law trademark.

In addition, based on Defendants abject failure to come forth with countervailing evidence, Plaintiff is entitled to a declaratory judgment that Defendants have no "Bloodsport" rights. Moreover, even if Defendants had cured their serious chain-of-title deficiencies (they did not), as the alleged successor to the Pathé Agreement (Dkt. 79-8, ¶¶ 2-3) Defendants would still be limited to Pathé's rights, namely the right to produce sequel films based on "Bloodsport II" provided such films use *no literary elements* from the original *Bloodsport* film and/or DiSalle's original "Bloodsport" screenplay, and Plaintiff is entitled to a declaratory judgment that he owns *all other rights* in his screenplay.

## II.    LEGAL STANDARD

Local Rule 7-10 provides that the party opposing a motion shall not file a response to a reply. C.D. Cal. L.R. 7-10. "Courts in this district have uniformly held that a sur-reply is improper 'when a reply neither presents new arguments nor new evidence.'" *Sound of Color, LLC v. Smith*, No. CV 22-1508, 2023 WL 5667573, at *1 (C.D. Cal. July 11, 2023) (citations omitted). Indeed, sur-replies "are highly disfavored, as they usually are a strategic effort by the nonmoving

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

party to have the last word on a matter." *Sims v. Paramount Gold & Silver Corp.*, No. CV 10-0356, 2010 WL 5364783, at \*8 (D. Ariz. Dec. 21, 2010) (citations omitted); *see also Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016) ("The Court generally views motions for leave to file a surreply with disfavor.").

### III. ARGUMENT

#### A. Plaintiff's Reply Stayed Within the Bounds of Responding to Defendants' Opposition and Did Not Make "New" Arguments.

Defendants' Motion for Leave should be denied because Plaintiff did not, contrary to Defendants' assertion, raise new arguments or facts in his Reply. Dkt. 82. "Plaintiff appropriately responded in his reply and did not expand the scope of the Motion beyond what Defendant put in issue in its opposition. An argument in a reply is not 'new' if it simply responds to arguments asserted in opposition to a motion." *Arceo v. Ardent Mills, LLC*, No. CV 23-1146, 2023 WL 5096332, at \*1 (C.D. Cal. Aug. 9, 2023).

Defendants "do not explain which issues, cases, or authorities are new, nor do they cite any federal authority to support the contention that a Sur-Reply is proper. They do not identify any specific grounds why it would be unfair not to consider the filing. ***It is also material that [Defendants] have already substantially exceeded the number of pages they are permitted to file***[.]" *Mohandas v. Wells Fargo Bank, N.A.*, No. LA CV 21-3349, 2023 WL 5506004, at \*6 (C.D. Cal. July 13, 2023) (emphasis added) (striking sur-reply); *see* Dkts. 79 (Defendants' 10,740-word Opposition to the Motion for Summary Judgment ("Opposition")); 79-1 (6,292-word brief-like Declaration of S. Michar Kernan ("Kernan Decl.") (Dkt. 79-1)).

Defendants' assert that the following supposedly "new facts and arguments warrant ... a Sur-Reply: Plaintiff's arguments regarding Defendants' purported defenses of Laches, Estoppel and Statute of Limitations, argued in

their Opposition; Plaintiff's arguments regarding Defendants' life story 'rights' argument raised for the first time in this action in their Opposition; and Plaintiff's arguments regarding the chain-of-title documents Defendants submitted with their Opposition and Defendants' erroneous assertion that '[a]fter the 1996 transfer from FM Entertainment of all the Bloodsport rights, Defendant Trans-American was the sole owner of all rights in Bloodsport[]' and that '[a]s Defendants owned the rights to the Bloodsport movies [including *Bloodsport* (1986)], Defendants properly had the Bloodsport trademark filed.'" Dkt. 97 at 13.

As to each of the above, Plaintiff duly responded directly to the arguments and evidence raised by Defendants in their Opposition. As such, Plaintiff's Reply does not make "new" argument warranting a sur-reply. *See Farmer v. Barkbox, Inc.*, No. CV 22-1574, 2023 WL 3149278 (C.D. Cal. Apr. 11, 2023) (Skyes, J.) (holding that argument in Defendant's reply "merely 'responds to arguments raised by Plaintiff in [her] opposition,' and so 'cannot be considered as new.'") (internal record citations omitted, brackets in original) (quoting *Afifeh v. Ahmadabadi*, No. CV 22-0928, 2022 WL 3016147, at *1 (C.D. Cal. July 5, 2022), and citing *Applied Materials, Inc. v. Demaray LLC*, No. 20-5676, 2020 WL 8515132, at *1 (N.D. Cal. Dec. 16, 2020)); *see also Sound of Color, LLC*, 2023 WL 5667573, at *1 (arguments in Defendants' reply "were not 'new' however, but rather arguments responding directly to evidence and arguments raised in the opposition.") (citations omitted).

"The arguments and evidence in Plaintiff's [R]eply to which Defendants object were directly responsive to Defendants' arguments, and therefore neither improper nor a basis for allowing leave to file a surreply." *Markson v. CRST Int'l, Inc.*, No. CV 17-1261, 2022 WL 790960, at *1 n.1 (C.D. Cal. Feb. 24, 2022) (citation omitted) (striking sur-reply).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

**B.    Defendants Repeat Arguments in Their Opposition.**

"[P]reliminary review of Defendants' proposed surreply indicates that the vast majority of the brief consists of arguments that were already made—or could have been made—in their opposition brief." *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 266 (N.D. Cal. 2018); *see Khachatryan v. Pompeo*, No. CV 18-1358, 2018 WL 6190591, at *1 (C.D. Cal. June 8, 2018) ("Plaintiffs' proposed surreply is little more than a restatement of arguments already presented in [its] Opposition.").

**C.    Plaintiff Appropriately Cited Record Evidence to Rebut Defendants' Erroneous Arguments.**

"[E]vidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief." *Applied Materials, Inc.*, 2020 WL 8515132, at *1; *see also Chloe SAS v. Sawabeh Info. Servs. Co.*, No. CV 11-4147, 2015 WL 12734005, at *1 (C.D. Cal. June 3, 2015) ("'[E]vidence submitted in direct response to evidence raised in opposition... is not 'new.'"") (citations omitted). "The facts are not 'new,' as they simply provide additional context in response to defendants' account of the [relevant facts]." *Id.*, at *2 (citing *Terrell v. Contra Costa Cnty.*, 232 Fed. Appx. 626, 629 n.2 (9th Cir. Apr. 16, 2007) (evidence adduced in reply was not new where "[t]he Reply Brief addressed the same set of facts supplied in [Plaintiff's] opposition to the motion but provides the full context to [Plaintiff's] selected recitation of the facts").

**D.    Defendants' Sur-Reply Improperly Raises New Arguments.**

Ironically, it is Defendants who improperly raise new arguments in their Sur-Reply. *See*, *e.g.*, Dkt. 83-1 at 8-9 (erroneously asserting (without standing to do so) Frank Dux's purported "right of publicity"). However, "[a] sur-reply may not be used to introduce new legal arguments for the first time." *CliniComp Int'l, Inc. v. Cerner Corp.*, No. CV 17-2479, 2022 WL 16985003, at *2 (S.D. Cal.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

Nov. 15, 2022) (collecting cases)

**E.    Defendants Misrepresent the Parties' Agreement Re: Plaintiff's Motion for Summary Judgment.**

Defendants falsely assert, of course, without any citation to evidence, that "[t]he parties agreed that Plaintiff would file first and that Defendants Opposition would be considered a Motion for Summary Judgment warranting a Reply." That never happened. Declaration of Marc Toberoff III ("Toberoff Decl. III"), ¶ 2.  Instead, the parties specifically agreed that in light of this Court's Standing Order VIII (F), Plaintiff would file their summary judgment motion and would include therein a footnote stating, "The parties had planned to file cross-motions for summary judgment, but consistent with Judge Sykes Civil Standing Order VIII (F), this Motion is being filed by Plaintiff, and the Defendants will file an Opposition, opposing the Motion and seeking summary judgment in their favor[,]" which Plaintiff did. *See* Dkt. 77-4 at 4 n.1.

Knowing they are on thin ice, Defendants next cite to the Court's signing of the parties' Proposed Order to increase the word limit on summary judgment briefing. Dkt. 83 at 1. That Proposed Order (Dkt. 75-1), however, like the parties' accompanying stipulation (Dkt. 75), mistakenly refers to the parties' contemplated "cross-motions for summary judgment" *before* they realized that the Court's Standing Order VIII (F) *prohibited* such cross-motions. Thus, after Plaintiff's brought this Court's Standing Order regarding summary judgment motions to Defendants' attention and the parties' agreed regarding their respective filings (*i.e.*, Plaintiff would file their motion which Defendants would oppose) Defendants proceeded to violate both. Toberoff Decl. III, ¶ 3.

**F.    Defendants' Argument Re: Damages is Misguided.**

Defendants conflate the terms "damages" and "damage." "The distinction ... is important.... 'The word damage (harm to property) is quite distinct in meaning from damages (money awarded to a victorious litigant).'" *San Diego*

6

*Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 n.7 (9th Cir. 2023) (citation omitted). "A petition to cancel a registration of a mark ... [may] be filed ... by any person who believes that he is or will be damaged ... by the registration of a mark." *Id*. (quoting 15 U.S.C. § 1064).

"[I]f the declaratory plaintiff has in fact been threatened with litigation for infringement of a federally registered mark, then it should be allowed to bring an action for declaratory judgment to determine non-infringement, and join with this claim a claim for invalidity of the registration, with a prayer for cancellation of defendant's registration." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:110 (5th ed. 2023).

Here, Defendants' February 25, 2021 cease and desist letter threatened DiSalle that any effort by him to produce a "Bloodsport" remake would "subject [him] to injunctive relief as well as damages, attorneys' fees and costs." SUF ¶ 34. Plaintiff duly filed suit including for a declaratory judgment that Defendants' purported trademark registrations were "void *ab initio* and of no force or effect." Compl. ¶¶ 50, 49, 41, Dkt. 1 (incorporating therein, "Defendants' trademark registrations and applications are therefore subject to cancellation").

"[T]rademark disputes are justiciable under the Declaratory Judgment Act when 'the plaintiff has a real and reasonable apprehension that he will be subject to liability.'" *FN Cellars, LLC v. Union Wine Co*., No. CV 15-2301, 2015 WL 5138173, at *2 (N.D. Cal. Sept. 1, 2015) (quoting *Chesebrough-Pond's, Inc. v. Faberge, Inc*., 666 F.2d 393, 396 (9th Cir. 1982)). Threats of litigation, both explicit and implicit, are sufficient to create justiciable controversies. *Rhoades v. Avon Prods., Inc*., 504 F.3d 1151, 1157–58 (9th Cir. 2007) ("concrete threats" not required to demonstrate reasonable apprehension of litigation under Ninth Circuit's "flexible approach").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

**G.** **Defendants' Conclusory Arguments Re: Statute of Limitations, Laches and Estoppel Fail to Address Plaintiff's Arguments and the Governing Legal Standards.**

Defendants' Sur-Reply simply repeats their vague conclusory statute of limitations, laches and estoppel arguments and never addresses Plaintiff's pointed arguments and Defendants' failure to satisfy the legal standards applicable to these affirmative defenses for which Defendants have the burden to prove. Instead, Defendants just repeat the falsehood that "there was a delay of thirty (30) years," unmoored from the facts of this case and the applicable standards. Defendants do not even bother to tell us what allegedly happened thirty years ago (in 1993) to have supposedly triggered the statute or laches.

To argue these defenses, Defendants also ignore Plaintiff's actual causes of action which boil down to a legitimate request for a declaratory judgment as to the parties' respective intellectual property rights in "Bloodsport" *going forward* and seeking cancellation of Defendants' trademarks on various grounds. For instance, Plaintiff filed <u>no</u> claim for copyright infringement regarding *any* prior "Bloodsport" film.

Plaintiff's claim for declaratory relief clearly states: "By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists … concerning (i) the invalidity of Defendants' purported "Bloodsport" trademarks and (ii) ***Plaintiff's and Defendants' respective rights to produce further films and other derivative works*** based upon Plaintiff's Property, for which Plaintiff desires a declaration of rights." Dkt. 1 (Complaint), ¶ 50.

Defendants repeatedly rely on a couple of background allegations in the Complaint, which Plaintiff included for context, that Defendants' alleged predecessors appear to have exceeded the scope of the Pathé Agreement in

8

*Bloodsport II* and *III* (Dkt. 83-1 (Sur-Reply) at 2-3).[1] But, as stated, this action includes no infringement or breach of contract claim regarding any prior films, and instead expressly makes clear that Plaintiff expressly seeks a judicial declaration as to the parties' respective rights to "produce further [Bloodsport] films." Dkt. 1, ¶ 50.[2]

As previously shown, even if 17 U.S.C. § 507(b) applied to Plaintiff's request for declaratory relief, which is debatable, Defendants completely fail to meet the legal standard they themselves cited, *i.e.*, that claims of co-ownership "accrue … 'when plain and express repudiation of co-ownership is communicated to the claimant[.]'" *Seven Arts Filmed Entm't Ltd.,* 733 F.3d at 1254 (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir.1996) (concerning co-authorship of joint work)).

Here, Defendants demonstrated no plain and express repudiation of DiSalle's ongoing rights in "Bloodsport" rights. On the contrary, the Cannon Agreement, the Pathé Agreement and the more recent 2010-2020 agreements between the Edward R. Pressman Film Company ("ERPFC") and DiSalle (the "ERPFC/DiSalle Agreements") in which Defendants *participated* (SUF 25) *all acknowledged and ratified DiSalle's rights*. SUF 4, 6, 10, 13, 26-30, 32-33.[3]

---

[1] Defendants' argument that this is a "judicial admission" is wrong as "the concept of judicial admissions applies only to factual assertions, not legal conclusions." *Eisen v. Day*, No. CV 21-5349, 2023 WL 7284149, at *4 (N.D. Cal. Nov. 2, 2023) (collecting cases).

[2] Furthermore, even if Plaintiff had filed for copyright infringement (it did not), each new infringing act causes a new claim to accrue "looking back three years from the date of filing." *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC,* 733 F.3d 1251, 1254 (9th Cir. 2013).

[3] Defendants repeatedly argue without proper evidentiary citations that DiSalle purportedly testified that "Bloodsport II, III and IV allegedly violated his rights." Dkt.

9

After, DiSalle declined in late 2020 to once again renew the ERPFC/ DiSalle Agreement because ERPFC and Defendants had failed for ten years to launch a new "Bloodsport" film, Defendants sent DiSalle an aggressive cease and desist letter on February 25, 2021, suddenly claiming for the first time that DiSalle had no rights, and that in any event, any use by DiSalle of his "Bloodsport" Screenplay would violate TFI's alleged trademarks. SUF 34.

On March 31, 2022, in response to Defendants' sudden cease and desist letter and well within the statute of limitations, Plaintiff filed this action to clear title under the Declaratory Judgment Act (Dkt. 1), as such actions are restricted to "actual controversies." 28 U.S.C. §2201(a). Both practically and legally, there was no cognizable delay on Plaintiff's part.

As there was no unreasonable delay, Defendants' laches argument fairs no better, and in any event, "[t]he defense is not a favored one in trademark cases." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1293 (S.D. Cal. 2018). The Lanham Act, 15 U.S.C. § 1064, is clear that cancellation claims based on abandonment or fraud may be brought at any time. *See Harjo v. Pro Football, Inc.*, 30 USPQ.2d 1828, 1831 (TTAB 1994) (laches defense "not available against claims of fraud and abandonment because there exists a broader ... 'public policy' interest").

Lastly, as to their estoppel defense, Defendants do not even feign an argument. Instead, they confusingly assert that Plaintiff allegedly "presents no evidence to rebut" the defense. Dkt. 83-1 at 12. Defendants forget that they have the burden as to their alleged affirmative defenses. Plaintiff demonstrated that Defendants did not even come close to meeting any one of the "[f]our necessary elements" to establish such defense. *Hampton v. Paramount Pictures Corp.*, 279

---

83-1 at 2, 6. This again is incorrect. Moreover, even if DiSalle had so testified (he did not), his legal understanding or conclusions of this litigation are irrelevant, and, in any event, do not affect the legal analysis.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

F.2d 100, 104 (9th Cir. 1960). Notwithstanding this, Plaintiff did support his arguments with evidence. *See* Dkt. 82 at 11 (citing SUF 3-6).

**H.     Defendants' Conclusory Denials Do Nothing to Fix Their Serious Chain-of-Title Problems Based on the Contracts They Placed in the Record.**

*First*, Defendants' statements regarding DiSalle/Pyramid's Option Agreement with Metro-Goldwyn Mayer, Inc. ("MGM" and "MGM Option") are incorrect. As discussed, it is elementary that MGM, as successor in interest to the Cannon and Pathé Agreements, could have no more rights in DiSalle's underlying Screenplay at issue than they had under the Cannon and Pathé Agreements. For that reason, notwithstanding the broad language of the MGM Option, it is nothing more than a quitclaim. *See* SUF ¶ 10 ("MGM hereby grants to [Pyramid] an option … to acquire all of MGM's right, titles and interest ***to the extent thereof***") (emphasis added). In fact, the operative grant in Exhibit "A" thereto, which became effective when the MGM Option was exercised, is aptly entitled "***Quitclaim Agreement***." *See* Dkt. 78-9 at 9 (emphasis added).

Thus, like its predecessors, Cannon and Pathé, MGM did not, as Defendants erroneously argue, have "all other rights relating to *Bloodsport* (including for purposes of obtaining a trademark)" to assign. Dkt. 83-1 at 14 (emphasis by Defendants). Tellingly, in selectively quoting the MGM Option out of context, Defendants misleadingly omit the "to the extent thereof" qualifier and that the grant in Exhibit 'A" is a mere quitclaim. *Id*.; Dkt. 78-9 at 9.

*Second*, Defendants still solely rely on (i) the assignment dated December 8, 1993 to **FM Entertainment (II) N.V**. ("FM Entertainment") from the joint venture The Bloodsport II Company (Dkt. 79-14) and (ii) the subsequent assignment dated June 10, 1996 from FM Entertainment to TFI. Dkt. 78-13; Dkt. 79-1 (Kernan Decl.), ¶ 26. But, whereas The Bloodsport II Company was originally intended as the assignee of the MGM Option, it was *not* in fact

11

assigned the MGM Option rights. Instead, **Transcontinental Cinema Group, Inc.** ("TCG") was assigned the MGM Option in an assignment from Pyramid to TCG dated December 8, 1993. Dkt. 79-15. And Defendants admit that FM Entertainment is a "company distinct from TCG." Dkt. 79-1 (Kernan Decl.), ¶ 26.

All this was meticulously explained by Plaintiff with pin cites and again in Plaintiff's Statement of Genuine Disputes (Dkt. 82-1, ¶¶ 41-45) which is even cited (misleadingly) by Defendants (*see* Dkt. 83-1 at 15:1-5). Yet despite all this, Defendants, in their Sur-Reply, continue to try to mislead the Court as to this basic deficiency *shown by their own record evidence*. Dkts. 79-14, 79-15.

*Third*, part of TFI's purported chain-of-title is a Rights Assignment Agreement, back-dated "as of July 3, 2001," wherein numerous offshore companies purported to assign their rights to unidentified "Properties" ("more fully described in Exhibit 'A'" thereto) to Jet-Set Aviation, Ltd. ("JSA"), yet another Cayman Islands company. But, oddly, the only copy of this supposed agreement in the record is as produced by Defendants (Dkt. 79-17 (Lensi 0432-0443)), but it is *not* executed by JSA and Exhibit "A" (page 9) *appears to have been removed from the document Defendants produced and submitted with their Opposition*. Dkt. 79-17 (0436-0437). In its Sur-Reply, Defendants once again rely on this same defective Rights Assignment Agreement but did nothing (presumably because they could not) to remedy these deficiencies.

*Fourth*, Defendants continue to rely on a notarized Assignment executed on May 5, 2005 from JSA to a company called "Trans American Film, Ltd." of all rights in *Bloodsport II-IV*, plus little-known projects, but tellingly, *no* rights in *Bloodsport* (on which Defendants base their entire case) are included. Dkt. 79-18. In their Sur-Reply, Defendants also misleadingly represent that this assignment is to "Trans-American Film**s**, Ltd." adding the hyphen and "s" to make the name look more like Defendant "Trans-American Films International,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

Inc." or its alleged Cayman Islands predecessor. Dkt. 83-1 at 16:5 (emphasis added). Then in typical conclusory fashion Defendants assert that these are the same company, while once again providing zero admissible evidence of this, not even a declaration from Lensi.[4]

Defendants' Sur-Reply, in addition to its Opposition, improper additional "brief" (in the form of an attorney's declaration), as well as their cited documents *demonstrate* rather than remedy these glaring deficiencies shown by *their own* record evidence.[5] Without a contractual entitlement to the underlying *Bloodsport* rights, Defendants' rights claims and TFI's trademark registrations and pending additional applications fail and must be cancelled.

Furthermore, even if Defendants had adduced evidence curing these four major deficiencies in its chain-of-title (they did not), TFI's alleged sequel rights, as the alleged successor of Pathé, would be as delineated and limited by the Pathé Agreement, as Defendants themselves admit. Opp. 2:21; 3:1-2; Kernan Decl., ¶ 21. As shown, the Pathé Agreement licensed to Pathé the right to produce just "one (1) sequel motion picture to 'Bloodsport'": "Bloodsport II." SUF 6-7. After this "one (1) sequel", it would thereafter have the right to produce sequels to and remakes of Bloodsport II, *provided* such film(s) *only*

---

[4] All Defendants can point to is a conclusory self-serving recitation in their agreement with ERPFC referencing Trans American Film, Ltd as a supposed "dba" for TFI (CI). Dkt. 83-1 at 16. *First,* this inadmissible hearsay does not create a triable issue of fact. *Second,* it is not credible given the tax-haven web of different offshore companies involved in *Bloodsport II-IV*. *See* Dkt. 79-17 (involving 17 separate entities).

[5] Although mooted by the four elemental deficiencies, Defendants cannot even provide admissible evidence that the Cayman Islands Trans-American International, Inc. ("TFI-CA") transferred its assets to Delaware Defendant TFI. *Despite Plaintiff pointing this out*, all Defendants cite to in their Sur-Reply is a conclusory attorney's declaration stating that TFI-CA was "converted" to a Delaware company, while attaching no evidence of this or of any transfer of TFI-CA's assets. *See* Dkt. 83-1 (citing Dkt. 79-45, ¶ 27).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

exploited "new and original characters" and "original plot, story, scenes and events created by [Pathé] ... , including [in] 'Bloodsport II.'" SUF 9.  But Pathé expressly did *not* have the right to produce more than "one (1) sequel motion picture" containing any elements (*e.g.*, plot, character(s), story, scene(s), sequence of event(s), settings, and themes) from *Bloodsport* (1988) which was based on DiSalle's Screenplay. *Id*.

On summary judgment, Plaintiff satisfied its initial burden of establishing the absence of a genuine issue of material fact by showing "that there is an absence of evidence to support the non-moving party's [the Defendants'] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 325 (1986). It was then incumbent on Defendants to adduce admissible *evidence* of "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). As that is sorely lacking, and Defendants, *despite every opportunity to do so*, have failed to provide *any* evidence curing the four major deficiencies in Defendant TFI's alleged ownership of any rights in "Bloodsport," Plaintiff is entitled to a declaratory judgment that Defendants do not own "Bloodsport" rights, including "Bloodsport" trademarks, and to cancellation of TFI's illicit trademark registrations and pending applications based on false representations of TFI's ownership and exclusivity.

## I.    Defendants Do Not Resuscitate Their Life Story Argument.

Defendants do not, and cannot, dispute that so-called "life story rights" neither comprise nor confer any cognizable proprietary rights, but rather just safeguard against defamation and privacy suits by individuals depicted in creative works. *See* Mark Lee, *Entertainment & I.P. Law* § 13:31 (2023) (nearly every court has held "there is no such right"); 5 *McCarthy on Trademarks & Unfair Competition* §28:20 (2023) ("There Are No 'Life Story Rights.' The First Amendment prevents a person from having any right to bar an unauthorized story ... about events in his or her life"); *De Havilland v. FXNetworks, LLC*, 21

14

Cal. App. 5th 845, 861 (2018) ("Producers of films[] may enter into agreements with individuals portrayed ... [for] access to the person's recollections or 'story' ... or a desire to avoid litigation for a reasonable fee. But the First Amendment simply does not require such acquisition agreements.").

Stymied, Defendants improperly raise for the first time a new argument in their Sur-Reply, asserting Dux's purported "right of publicity"—never mentioned in Defendants' Opposition and thus, neither in Plaintiff's Reply. *See CliniComp Int'l, Inc*, 2022 WL 16985003, at *2 (S.D. Cal. Nov. 15, 2022) ("A sur-reply may not be used to introduce new legal arguments for the first time.") (collecting cases). Notwithstanding this, and that Defendants, once again, *lack standing* to assert Dux's purported rights, Defendants' *new argument* also fails.

Due to the First Amendment, California's right of publicity statute is limited to strictly commercial uses, such as "advertising or selling, or soliciting purchases of, products, merchandise, goods or services[.]" Cal. Civ. Code § 3344. The common law variant is similarly limited. *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 409 (2001); *see Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016) (holding that the movie "*The Hurt Locker* is not speech proposing a commercial transaction."). But even assuming *arguendo* that *Bloodsport* constitutes such a commercial transaction, the film, or more on point, further films, at issue herein, constitute "speech that is fully protected by the First Amendment, which safeguards the storytellers [] who take the raw materials of life [] and transform them into art, be it articles, books, movies, or plays." *Sarver*, 813 F.3d at 906; *see* 2 J. McCarthy, *The Rights of Publicity & Privacy*, § 8:64 (2023) ("[N]o one has the 'right' to prevent others from describing or discussing events in their life that are of public interest."); *Dora v. Frontline Video, Inc.*, 15 Cal.App.4th 536, 542-46 (1993) (documentary film about surfer, an alleged purely private individual, still protected under First Amendment from right of publicity and misappropriation claims).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

Contrary to Defendants' assertion, this is consistent with the U.S. Supreme Court's holding in *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977). In *Zacchini,* the Court allowed an unusual right of publicity claim to proceed based on the defendant's television broadcast literally depicting the plaintiff's entire "Human Cannonball" act, finding it deterred attendance of his performance. *See Sarver,* 813 F.3d at 904 (finding *Zacchini* inapplicable to a movie about actual soldiers serving in Iraq).

### J.       Plaintiff Presented Ample Evidence Pointing to the Invalidity of Defendants' Trademark Registrations.

Defendants' blank assertion that Plaintiff failed to present evidence to rebut the validity of their trademark registrations is equally erroneous. *First,* as stated, Plaintiff pointed to at least four glaring deficiencies in the record evidence comprising Defendant TFI's (the trademark registrant's) purported chain-of-title to alleged rights in "Bloodsport," including a "Bloodsport" mark. *Supra* § III.H; Dkt. 82 § II.G. This evidence and those deficiencies have neither been rebutted nor cured by Defendants. *Second*, Plaintiff pointed to the numerous misrepresentations in nearly every one of the applications and other documents submitted by Defendants to the USPTO to illicitly secure registrations TFI was not entitled to. Dkt. 78-3 § IV.D; Dkt. 82 § II.J.

Defendants' *modus operandi* is similar here. In their Opposition, they misrepresented that "Defendant Trans-American [TFI] was the sole owner of all rights in Bloodsport[]" and that "[a]s Defendants owned the rights to the Bloodsport movies, Defendants properly had the Bloodsport trademark filed." Dkt. 79 (Opposition) at 13:7, 21-22. Defendants did the same in their false trademark applications and Statements of Use to the USPTO which prominently featured the original 1986 *Bloodsport* film (originated and produced by DiSalle), as this now "iconic" movie is the *only* one of note. *See, e.g.*, Dkts. 79-47, 79-73.

In response to these erroneous statements in Defendants' Opposition,

16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

Plaintiff pointed out that the MGM Option Agreement Defendants purport to rely on clearly shows that they do *not* "own" this movie (even notwithstanding the seismic gaps in their chain-of-title). Dkt. 82 at 13. In their Sur-Reply, Defendants back-peddle, acknowledging (as they must) that MGM "retained ownership of ... the film" and "'the right to exhibit, distribute and otherwise exploit only the Picture itself in any and all media ... ,'" but now represent that "MGM assigned all other rights relating to *Bloodsport* (including for purposes of obtaining a trademark)." Dkt. 83-1 (Sur-Reply) at 15. But this also cannot be true because MGM's ongoing exploitation of the *Bloodsport* picture "in all media" would necessarily entail use of the "Bloodsport" title and mark.

Defendants' trademark applications and Statements of Use repeatedly intimated that they owned the original *Bloodsport* (as they *expressly* did in their Opposition), and misrepresented MGM's exploitation of "the Picture itself" as their own exploitation in their Statements of Use. Dkts. 79-47, 79-73. But even more egregiously, Defendant Lensi on behalf of TFI repeatedly misrepresented under oath that ***"no other person, firm or corporation … has the right to use the mark in commerce [except TFI,]"*** when Defendants knew full well, as clear from the MGM Option Agreement, and finally admitted in their Sur-Reply, that MGM continued to own and distribute the 1988 *Bloodsport* film. Dkt. 79-51 at 6; Dkt. 79-70 at 9; SUF 45.

Thus, "at the very least, [Defendants] *should have known* that the representations in [the filings] were false, as [they] knew at that time what the true facts were." *Tokidoki, LLC v. Fortune Dynamic, Inc.*, No. CV 07-1923, 2009 WL 2366439, at *11 (C.D. Cal. July 28, 2009) (emphasis in original); *see Fuji Med. Instruments Mfg. Co., Ltd. v. Am. Crocodile Int'l Grp., Inc.*, 2021 WL 3286400, at *19 (T.T.A.B. July 28, 2021) (applicant's "false and material … declaration that no other entity had the right to use the mark in commerce w[as] made knowingly and with intent to deceive the USPTO"); *On Site Energy Co. v.*

17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

*MTU Onsite Energy Corp.*, No. CV 10-1671, 2013 WL 3990919, at \*6-7 (E.D.N.Y. 2013) (willful blindness supports fraud regarding exclusive-use misrepresentation).

## K.   Defendants Have Not Rebutted Their Statutory Abandonment of TFI's Trademark Registrations.

A federal court may cancel any trademark registration for abandonment. 15 U.S.C. §1064(3). Plaintiff alleged that "[s]ixteen years after the release of *Bloodsport IV* (1999), Defendants ... register[ed] "Bloodsport" trademarks" and then for "ten years" Defendants have not used the mark for film production. Dkt. 1, ¶¶ 31, 42 (incorporated by reference in all claims).

It is undisputed that Defendants made no use in commerce of TFI's purported mark(s) since its 2015 and 2019 registrations, seven and four years ago, respectively, in film production (the class registered). Under the Lanham Act, "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment[,]" shifting the burden of proof to Defendants. *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. CV 20-4556, 2021 WL 4535351 (C.D. Cal. Aug. 5, 2021) (granting summary judgment).

Whereas Plaintiff's motion clearly argued abandonment (Dkt. 78-3, § IV.B.4, pp. 23-24), "Defendant's Opposition does not address Plaintiff['s] prima facie [] claim ... Defendant [TFI] therefore concedes [it]." *Incredible Features, Inc. v. Backchina, LLC*, No. CV 20-0943, 2021 WL 6337194, at \*3 (C.D. Cal. Dec. 16, 2021).

Defendants' new Sur-Reply assertion that Plaintiff is barred from arguing abandonment because the word does not appear in the Complaint is erroneous when Plaintiff alleged that "[s]ixteen years after the release of *Bloodsport IV* (1999), Defendants ... register[ed] "Bloodsport" trademarks" and then for "ten years" Defendants have not used the mark for film production. Dkt. 1, ¶¶ 31, 42 (incorporated by reference in all claims). *See Pac. Coast Fed'n Fishermen's*

18

*Assoc. v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.") (citation omitted).

Defendants *still* have provided *no evidence* of "use in commerce" since the 2015 and 2019 registrations, let alone the past "3-year period." 15 U.S.C. § 1064(3). Instead, they solely argue that they filed Statements of Use, but that is not itself evidence of use and circular, particularly as Defendants' Statements of Use are filled with misrepresentations. *See* Dkts. 82 at 16-20; 78-3 at 28-31.

DATED:  December 4, 2023        TOBEROFF & ASSOCIATES, P.C.

By:   */s/ Marc Toberoff*
        Marc Toberoff

*Attorneys for Plaintiff Mark DiSalle*

19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, Mark Disalle, certifies that this brief contains 5,696 words, which complies with C.D. Cal. Local Rule 11-6.2.

Date: December 4, 2023                    TOBEROFF & ASSOCIATES, P.C.

By: _____ */s/ Marc Toberoff* _____
                    Marc Toberoff

*Attorneys for Plaintiffs*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO FILE SUR-REPLY AND RESPONSE