1  S. Michael Kernan, State Bar No. 181747
   R. Paul Katrinak, State Bar No. 164057
2  THE KERNAN LAW FIRM
   9663 Santa Monica Blvd., Suite 450
3  Beverly Hills, California 90210
   Telephone: (310) 490-9777
4  Facsimile: (310) 861-0503

5  Attorney for Defendants
   Alberto Lensi and
6  Trans-American Films International Corporation

7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11 MARK DISALLE, an individual,          ) Case Number: 2:22-CV-02152-SSS-
                                         ) PVCx
12            Plaintiff                   )
                                         ) Assigned for all purposes to the
13      v.                                ) Honorable Sunshine S. Sykes
                                         )
14 ALBERTO LENSI, an individual;         )
   TRANS-AMERICAN FILMS                  )
15 INTERNATIONAL CORPORATION,            ) **DEFENDANTS' SUR-REPLY TO**
   a Delaware corporation; and DOES 1    ) **NEW ARGUMENTS RAISED BY**
16 through 10,                            ) **PLAINTIFF FOR THE FIRST TIME**
                                         ) **ON REPLY AND REPLY IN**
17            Defendants.                 ) **SUPPORT OF DEFENDANTS'**
                                         ) **MOTION FOR SUMMARY**
18 _____        ) **JUDGMENT**

19
                                          Date:      February 2, 2024
20                                        Time:      2:00 p.m.
                                          Location:  Courtroom 2
21

22

23

24

25

26

27

28

*THE KERNAN LAW FIRM*
*9663 Santa Monica Blvd., Suite 450*
*Beverly Hills, California 90210*
*(310) 490-9777*

1

# <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION** ................................................................ 1

II.   **LEGAL ARGUMENT** ......................................................... 1

    **A.   Plaintiff Concedes That Plaintiff's Complaint is Barred by the Doctrine of Laches** ................................................................ 1

    **B.   Summary Judgment Should be Granted due to no Evidence of Damages**  3

        **1.   Plaintiff has waived argument on damages** ............................ 3

        **2.   Injunctive relief as a means to claim damages fails for at least two reasons** ................................................................ 4

        **a.   There was no evidence and not even cohesive argument to explain the irreparable injury** ........................................ 4

        **b.   Even if Plaintiff did submit evidence of irreparable harm, it would have failed due to Plaintiff's delay** ...................... 5

    **C.   Plaintiff Concedes That the Statute of Limitations Expired** ...... 6

    **D.   Plaintiff Presents no Evidence to Rebut Defendants' Estoppel Defense**  7

    **E.   Plaintiff's Individual Claims Fail due to a Lack of Evidence** .... 7

        **1.   Plaintiff has no Evidence of "Fraud" on the PTO** .................. 7

        **2.   Plaintiff Concedes no Common Law Trademark/Unfair Competition** ................................................................ 8

        **3.   Plaintiff Submitted no Evidence or Argument on Dilution** ..... 8

    **F.   Plaintiff's Other Issues Raised in Reply also Fail** ...................... 8

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

i

**1.    Plaintiff has Exhausted all Rights he had in Bloodsport (Life Story Rights)** ................................................................................. 8

**2.    There is no Issue with the Chain of Title** ................................. 9

**3.    Plaintiff does not have "Priority of Use in Commerce" of the Bloodsport Trademark** ................................................................. 12

**4.    Plaintiff Failed to Present Evidence to Rebut the Presumption that Defendants' BLOODSPORT trademarks are Valid** ....................... 13

**5.    There was no Abandonment and this Argument Fails** .......... 14

**III.   CONCLUSION** ........................................................................ 15

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amstar Corp. v. Domino's Pizza, Inc.*,
   615 F.2d 252, 205 U.S.P.Q. 969 (5th Cir. 1980) ................................................... 6

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
   575 U.S. 138 (2015) ........................................................................................... 13

*Borden, Inc. v. Kraft, Inc.*,
   224 U.S.P.Q. 811, 1984 WL 1458 (N.D. Ill. 1984) ............................................ 6

*Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*,
   448 F.3d 1118 (9th Cir. 2006) .......................................................................... 13

*Flexible Lifeline*,
   654 F.3d ............................................................................................................. 5

*Grupo Gigante SA De CV v. Dallo & Co., Inc.*,
   391 F.3d 1088, 73 U.S.P.Q.2d 1258 (9th Cir. 2004) .......................................... 5

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,
   736 F.3d 1239 (9th Cir. 2013) ...................................................................... 4, 5

*Iancu v. Brunetti*,
   139 S. Ct. 2294 (2019) ..................................................................................... 13

*Incredible Features, Inc. v. Backchina, LLC*,
   2021 WL 6337194 (C.D. Cal. Dec. 16, 2021) ..................................................... 3

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
   402 F. Supp. 3d 877 (N.D. Cal. 2019) ............................................................... 6

*M2 Software, Inc. v. Viacom, Inc.*,
   223 F. App'x 653 (9th Cir. 2007) ...................................................................... 4

*Marketquest Grp., Inc. v. BIC Corp.*,
   316 F. Supp. 3d 1234 (S.D. Cal. 2018) .......................................................... 1, 2

*Protech Diamond Tools, Incorporation v. Liao*,
   2009 WL 1626587 (N.D. Cal. 2009) ................................................................... 5

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
   344 F. Supp. 3d 1147 (S.D. Cal. 2018) .............................................................. 3

*Spiraledge, Inc. v. SeaWorld Entertainment, Inc.*,
   109 U.S.P.Q.2d 1774, 2013 WL 3467435 (S.D. Cal. 2013) ............................... 5

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................. 3

*Zacchini v. Scripps-Howard Broadcasting*,
   433 U.S. 562 (1977) ........................................................................................... 8

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Statutes

15 U.S.C.A. § 1115(a) ............................................................................................ 14

Other Authorities

McCarthy at § 31:32 ................................................................................................ 5

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

**DEFENDANTS' SUR-REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.     **INTRODUCTION**

Plaintiff's Reply raises a plethora of new facts and arguments not raised in Plaintiff's Motion for Summary Judgment, each of which requires a response and allows this Sur-Reply. (*See* Motion for Leave to file a Sur-Reply/Reply).  The legal and factual basis for this Sur- Reply/Reply are discussed in the Motion.

Here, Defendants explain why even the arguments raised by Plaintiff for the first time in Plaintiff's Reply fail.  Defendants also reply, as generally permitted, to the legal reasons why summary judgment should be granted for Defendants.  The first four sections explain why legally Defendants prevail as a matter of law. The fifth section explains the complete lack of evidence for each of Plaintiff's claims.  The sixth section addresses the new issues raised by Plaintiff and explains why they each fail in spite of Plaintiff's sandbagging attempts to change the record on Reply.

## II.    **LEGAL ARGUMENT**

### A. **Plaintiff Concedes That Plaintiff's Complaint is Barred by the Doctrine of Laches**

Laches is essentially conceded by Plaintiff.  Defendants could not find a single case that addressed a delay like this (30 years).  Plaintiff cites one case that has no application to these facts.  *See Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1292–93 (S.D. Cal. 2018).  Unlike that case which was filed a few months after an infringement, here, Plaintiff waited 30 years.  In terms of the timing of the filing of the *Marketquest* case, the court held:

> "In this case, the Court finds that California's four-year statute of limitations for trademark infringement governs. Marketquest timely filed suit within that period. Whereas Defendants' alleged infringement began to occur in <u>December 2010</u>, Plaintiff brought suit in <u>March 2011</u>."

*Id*.  There was a delay in that case of three months.  Here, there was a delay of 30 years.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

1    Here, there is also a major difference, because the filing of this case is

2  distantly outside the statute of limitations.  When interpreting the statute of

3  limitations impact on laches, the court in *Marketquest* explained:

4      "In assessing delay [for laches], a court "must first decide whether
       [the plaintiff] filed suit within the applicable" statute of limitations
5      period. (Citations.)  When a plaintiff has filed suit within that time
       period, "the strong presumption is that laches is
6      inapplicable." (Citations.)  Here, because Marketquest filed its suit
       within the applicable statute of limitations, its suit against
7      Defendants is not barred by laches".

8  *Id*. at 1293.

9      Here, it is exactly the opposite as there was a delay of 30 years,

10 well beyond the statute of limitations.

11     There is also massive prejudice here (which Plaintiff did not and could not

12 rebut).  There was no prejudice at all in the *Marketquest* case from the three-

13 month delay.  *Id*. at 1295.  Three-months delay and thirty-years delay are night

14 and day different.  Plaintiff did not even address the witnesses and documents

15 lost by his extraordinary delay.

16     Plaintiff completely ignores his own allegations and his testimony.  He

17 claims Bloodsport II, III, and IV violate his rights.  Specifically, Plaintiff testified

18 that Bloodsport II, III and IV allegedly violated his rights.  (Plaintiff's SUF Nos.

19 4 and 5).  These films are all from the 1990's. Additionally, Plaintiff's Complaint

20 specifically alleges as follows:

21     Notwithstanding this narrow license, after the first sequel to
       *Bloodsport* was produced entitled *Bloodsport II* (1996), two
22     additional sequels were made: *Bloodsport III* (1997) and *Bloodsport
       IV* (1999) using elements of the Property contrary to the license
23     agreement.

24 (Complaint, ¶ 2).

25     . . .

26     Further, as alleged hereinabove, <u>Bloodsport II and III were
       unauthorized</u> because the Limited License in the Pathe Agreement
27     (to which Defendants' succeeded) specifically reserved to Plaintiff
       all rights in the "Bloodsport" Property other than the right to produce
28     one sequel, Bloodsport II.  Defendants therefore had no right or

2

authority to use Plaintiffs "Bloodsport" mark beyond the single authorized sequel, Bloodsport II.

(Complaint, ¶ 63).

. . .

Defendants were solely authorized to use Plaintiffs "Bloodsport" mark in connection with one sequel film, *Bloodsport II.* Defendants' <u>continuing unauthorized use in commerce of the "Bloodsport" mark dilutes and is likely to dilute the distinctiveness of Plaintiffs famous mark by eroding the identification of this mark,</u> among the public and members of the entertainment industry, with Plaintiff, tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiffs goods and services.

(Complaint, ¶ 83).

As evidenced by Plaintiff's judicial admissions in his Complaint, the doctrine of laches plainly bars Plaintiff's claims. Plaintiff admitted in his deposition his claims accrued more than 20 years ago.

## B. <u>Summary Judgment Should be Granted due to no Evidence of Damages</u>

### 1. <u>Plaintiff has waived argument on damages</u>

Plaintiff has waived any argument on damages. *See Incredible Features, Inc. v. Backchina, LLC*, 2021 WL 6337194, at *3 (C.D. Cal. Dec. 16, 2021); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011). Plaintiff has one sentence in the whole reply brief and not a single reference in his original Motion concerning damages.[1] In the Reply, there is one sentence about damages and it is a mere conclusion. That sentence (pertaining to the fraud on the PTO claim) is:

---

[1] Plaintiff cites one case, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147, 1158 (S.D. Cal. 2018), for the proposition that if "Plaintiff has demonstrated that [if he proceeds with his film there is] a real and reasonable apprehension that [he] w[ill] be subject to an infringement action" by Defendants." First, there is no evidence demonstrating this. There is no testimony by Plaintiff that supports that position. There is no declaration from Plaintiff. There is simply no evidence submitted by Plaintiff. Second, that case has no application here as it was on a 12(b)(1) motion for lack of subject matter jurisdiction, which does not have the same standard as a motion for summary judgment. *Id.* at 1153. Additionally, evidence was provided in that case, unlike the case at hand. *Id.*

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

> "Defendants' fraudulent statements to the USPTO resulting in TFI's registrations have just as obviously <u>damaged</u> DiSalle because, after DiSalle did not further extend the DiSalle/ERPFC Agreement, Defendants expressly asserted TFI's trademark registrations to encumber DiSalle's ability to secure financing/distribution for a "Bloodsport" remake."

Plaintiff provides no evidence.  There is no testimony about any attempts to secure financing or distribution.  Plaintiff did not even submit a declaration.  Furthermore, this would be barred as speculative damages.  In fact, there is no testimony by <u>anyone</u> as to damages, not even expert testimony.  There is simply no way for this case to proceed given the lack of damages.[2]

## 2. <u>Injunctive relief as a means to claim damages fails for at least two reasons</u>

### a. <u>There was no evidence and not even cohesive argument to explain the irreparable injury</u>

Injunctive relief as a method for damages for all claims but Declaratory Relief fails at the outset because Plaintiff did not even make a cohesive argument.

Moreover, Plaintiff presented no evidence of a need for an injunction.  Both preliminary and permanent injunctions require that there must be "irreparable harm", and such harm *cannot* be presumed even if a likelihood of confusion is shown (which has not been shown here). *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249-51 (9th Cir. 2013).   The traditional four-factor test is employed by courts of equity, including "'establish[ing] that remedies available at law, such as monetary damages, are inadequate to compensate' for the injury." *Id.* at 1249  In reversing the granting of a preliminary injunction, the Ninth Circuit determined that the district court

---

[2] Courts frequently grant summary judgment on damages in infringement cases where damages are unproven, remote, or speculative. *M2 Software, Inc. v. Viacom, Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007); *AAA of N. Cal.*, 2019 U.S. Dist. LEXIS 47394 at *81-82; *Blau*, 2003 U.S. Dist. LEXIS 27432 at *9.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

4

"abused its discretion by relying on "unsupported and conclusory statements regarding harm [plaintiff] *might* suffer." *Id.* at 1250. Additionally, the Ninth Circuit plainly stated the new requirements for irreparable harm as follows:

> Gone are the days when "[o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." (citation.) This approach collapses the likelihood of success and the irreparable harm factors. Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm. As in *Flexible Lifeline*, 654 F.3d at 1000, the fact that the "district court made no factual findings that would support a likelihood of irreparable harm," while not necessarily establishing a lack of irreparable harm, leads us to reverse the preliminary injunction and remand to the district court.

*Id.* at 1250 – 51. Here, there is simply no evidence of irreparable harm. Plaintiff has offered no proof of loss of business, loss of customer goodwill, or any other actual injury. Plaintiff does not even have an expert, which is typically how this is proven. This is fatal to Plaintiff's claims.

**b. Even if Plaintiff did submit evidence of irreparable harm, it would have failed due to Plaintiff's delay**

The delay here in seeking relief also prevents the required irreparable injury necessary for injunctive relief. *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102, 73 U.S.P.Q.2d 1258, 1267 (9th Cir. 2004) (Holding that the delay means Plaintiff is estopped or barred by laches from claiming injunctive relief); See also McCarthy at § 31:32 (Delay negates irreparable harm). In fact, the Ninth Circuit has consistently held that this type of delay bars the required "irreparable injury" needed for injunctive relief. *Protech Diamond Tools, Incorporation v. Liao*, 2009 WL 1626587 (N.D. Cal. 2009) (After almost twenty-four months to sue, and four more months to move for a preliminary injunction, which was denied, court noting that: "That delay alone is sufficient to undermine Plaintiff's claim of immediate, irreparable harm."); *Spiraledge, Inc. v. SeaWorld Entertainment, Inc.*, 109 U.S.P.Q.2d 1774, 1779, 2013 WL 3467435 (S.D. Cal. 2013) (Denying preliminary injunction because 13-month delay

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

negated irreparable injury.); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 897 (N.D. Cal. 2019) later proceedings 2020 WL 759409, *9 (N.D. Cal. 2020) (Four-year delay in seeking preliminary injunction supports lack of irreparable injury; preliminary injunction denied.)

"Even a few weeks' delay in filing suit may, under the proper set of facts, speak louder than plaintiff's legal arguments claiming an urgent need for a prompt injunction to remedy an allegedly irreparable injury occurring to plaintiff's trademark. For example, the federal court in Chicago said that a six-month delay in suing for false advertising 'speaks volumes about whether a plaintiff is being irreparably injured.'" *Borden, Inc. v. Kraft, Inc.,* 224 U.S.P.Q. 811, 822, 1984 WL 1458 (N.D. Ill. 1984).  Another court explained that a trademark owner that strongly believed his customers were being deceived would hardly have remained idle for such an extended period of time (10 years in that case).  *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 205 U.S.P.Q. 969 (5th Cir. 1980), cert. denied, 449 U.S. 899, 66 L. Ed. 2d 129, 101 S. Ct. 268, 208 U.S.P.Q. 464 (1980) (judgment for plaintiff reversed).  Here, Plaintiff unreasonably delayed for thirty years precluding injunctive relief.[3]

### C. Plaintiff Concedes That the Statute of Limitations Expired

Despite Plaintiff's own deposition testimony, under penalty of perjury, that Bloodsport II, III and IV used elements of Bloodsport and "violated" his rights, Plaintiff offers no evidence in his Reply, only argument.  There is no declaration from Plaintiff attempting to clarify his deposition testimony that his rights were violated.  Plaintiff does not even attempt to explain why he waited for over 30 years to assert an ownership claim in Bloodsport.  The statute of limitations plainly bars Plaintiff's claim of alleged ownership in Bloodsport.

---

[3] The cases finding a lack of irreparable injury are separate from and in addition to the laches issues in the preceding section, which highlights the multitude of issues Plaintiff has here with his 30-year delay.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

### D. **Plaintiff Presents no Evidence to Rebut Defendants' Estoppel Defense**

Plaintiff presents no evidence to rebut Defendants' estoppel defense, and merely presents conclusions.  There is no declaration from Plaintiff or anyone else to rebut Defendants' estoppel defense.  Therefore, Defendants are entitled to summary judgment on this as well.[4]

### E. **Plaintiff's Individual Claims Fail due to a Lack of Evidence**

#### 1. **Plaintiff has no Evidence of "Fraud" on the PTO**

Plaintiff presents no evidence, let alone the <u>clear and convincing evidence</u> for his claim of fraud on the PTO.  Plaintiff's entire claim is based on Defendants use of screenshots from the original Bloodsport, which Defendants had the right to do for purposes of Defendants' trademark applications.  MGM retained only the right to distribute the original Bloodsport film for its film library.  MGM gave all other rights to the original Bloodsport film in any media (including applying for a trademark) to Defendants' predecessor.

Defendants' evidence in opposition established that there was no fraud on the PTO and all filings with the PTO were proper and done in good faith.  Regardless, the issue with the screenshots from the first Bloodsport film are nonsense.  This claim requires clear and convincing evidence of a subjective intent to defraud. Defendants and he lawyer that filed the application must have known that there was fraud, and did it anyway. Here, putting aside the fact that Defendants had all the rights to apply for a trademark, there is an additional reason that there was no fraud. It is well settled there are no trademark rights in a single film, and trademark rights require a series of films, as noted below. Thus, even if MGM kept certain rights, it did not have any trademark right (neither did Plaintiff) and the viability of a trademark only arose

_____

[4] Plaintiff makes one throw away statement about "unclean hands." Without any argument or evidence to establish alleged unclean hands.  This one sentence argument should be disregarded by the Court.

when the subsequent series of films were created. Using the screenshots was not to show that there was a trademark right in the first film (there cannot be one) but to show the series of films. In any case, Defendants and the lawyer who filed the documents with the PTO certainly did not have a subjective intent to defraud because Defendants and she correctly believed that there can be no trademark rights in a single film.  Plaintiff certainly has presented no evidence that she, a former PTO examiner, ever intended to defraud the PTO. Therefore, Defendants are entitled to summary judgment on this claim as well.

### 2.  <u>Plaintiff Concedes no Common Law Trademark/Unfair Competition</u>

Plaintiff presented no evidence for his alleged common law trademark/unfair competition claim.  Plaintiff makes a convoluted argument claiming that MGM owns the rights to Bloodsport; however, those rights are limited solely to the distribution of the picture Bloodsport that was produced and distributed in commerce by Cannon. All other rights associated with the film (including the trademark rights) owned by Cannon were assigned to Defendants' predecessor.  Plaintiff simply has no rights in Bloodsport, while Defendants do.

### 3.  <u>Plaintiff Submitted no Evidence or Argument on Dilution</u>

Plaintiff submitted no evidence concerning Plaintiff's claim for Trademark Dilution, so Defendants' Motion should be granted on this cause of action.

### F.  <u>Plaintiff's Other Issues Raised in Reply also Fail</u>

### 1.  <u>Plaintiff has Exhausted all Rights he had in Bloodsport (Life Story Rights)</u>

There are several reasons life rights are significant contrary to what Plaintiff claims.  First, in California (where Dux is a resident) there is a right of publicity, which is the right to make money off one's name and likeness.  This has also been upheld by the U.S. Supreme Court in the only case where the high court has addressed the right of publicity. *Zacchini v. Scripps-Howard*

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

*Broadcasting,* 433 U.S. 562, 576 (1977) (Holding there was a right of plaintiff to make revenue off his human cannonball act).  Second, life rights are important so as not to defame the subject of a film, or invade his privacy.   In terms of privacy, California has a claim for false light invasion of privacy that would be directly applicable, because a claim is actionable under that tort if you say a person did something, which in actual fact, they did not do.[5]

## 2.  **There is no Issue with the Chain of Title**

Plaintiff's Motion did not raise any issues concerning the chain of title and did not contest the chain of title.  Plaintiff's Motion conceded the chain of title was valid.  At no time did Plaintiff argue that the trademark was not valid because of the chain of title, and this argument lacks merit.  Concerning the chain of title, it is important to note what was retained by Metro-Goldwyn-Mayer Inc. ("MGM"). MGM has a library of films containing everything from Bloodsport to James Bond. In its option to Plaintiff's company Pyramid Entertainment, Inc., MGM retained ownership of only the actual film itself, and specifically, the right to "exhibit, distribute, and otherwise exploit <u>only the Picture itself</u> in any and all media…" *See* Dkt. 79-12 (Exhibit "K" to the November 10th Kernan Declaration ("First Kernan Decl.")), ¶ 1(a)-(b) (emphasis added). Aside from these limited rights, MGM assigned <u>all other rights</u> relating to *Bloodsport* (including for purposes of obtaining a trademark).[6] *Id.*

---

[5] Plaintiff's two misquoted treatises do not stand for the proposition that life rights are meaningless, as claimed.  Rather, the misquote from Professor McCarthy's Trademark treatise (which has nothing to do with life rights or entertainment law) simply does not apply when they are making a moving and is out of context.  The fact is that there are some instances where the First Amendment allows you to tell the story (mostly when the person is a public figure or where the entire story is already in the public domain), but none of that would apply to Dux.  In fact, the US Supreme Court specifically rejected the broad application of the First Amendment that Plaintiff misleadingly argues in the *Zachinni* case.

[6] Concerning the MGM Option Agreement, the grant of rights specifically states as follows:

> All motion picture, television and allied, ancillary, subsidiary and incidental
> rights in and to one or more motion picture prequels, sequels, remakes and/or

**DEFENDANTS' SUR-REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Upon execution of the MGM option in 1993, these rights (including those for the purposes of obtaining a trademark) were transferred to Transcontinental Cinema Group, Inc., a fact which Plaintiff does not dispute. *See* Dkt. 82-1 (Plaintiff's Statement of Genuine Disputes of Material Fact), ¶¶ 43 and 44. These rights were then assigned to Defendants' predecessor, FM Entertainment International (II) N.V. ("FM Entertainment"):

> (D)   … Accordingly, for good and valuable consideration, . . . **hereby irrevocably grant, sell, transfer, convey and assign exclusively to F.M.**, in perpetuity and throughout the universe all of the following:
>
> 1.    All of Grantor's and all of Transcontinental's right, title and interest, whatsoever, in and to the motion picture currently entitled "BLOODSPORT II" and all rights therein whatsoever, (the "Picture"), and all other motion picture projects based upon the motion picture **"Bloodsport"** described in subparagraph 1(e) below, and/or the Picture, now held or hereafter acquired, including but not limited to:
>
> (a)    any and all rights acquired by Grantor and Transcontinental (or any of them) **pursuant to that certain Option Agreement ("Option Agreement") dated as of December 9, 1992 between Pyramid Entertainment, Inc. and Metro-Goldwyn-Mayer, Inc.** (as successor-in-interest to Pathe Entertainment, Inc.), including without limitation, all rights acquired by virtue of the exercise of the option contained in such Option Agreement;

*See* Dkt. 79-12 (Exhibit "M" to First Kernan Decl.), p. LENSI 0136-0137 ¶D, ¶1(a) (emphasis added).

Plaintiff also attempts to retroactively alter the undisputed factual record by stating that Trans-American and various other companies "purported to assign their rights" to Jet-Set Aviation, Ltd. ("Jet Set"). Dkt. 82 (Plaintiff's Reply Brief) § II(G), p. 13. However, in support of his Motion for Summary Judgment, Plaintiff's Statement of Uncontroverted Facts states that Trans-American and FM

> other productions based, in whole or in part, on the motion picture starring Jean-Clause Van Damme entitled "BLOODSPORT" ("Picture") and the screenplay currently entitled "BLOODSPORT II" written by Jeff Schechter, including, without limitation, the right to exhibit, distribute and/or otherwise exploit any or all of the foregoing in any and all media, whether now known or hereafter devised, throughout the world, in perpetuity. . . .

*See* Dkt. 79-12

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Entertainment **did** assign their rights to Jet Set, and cites to the same July 3, 2001 agreement he now seeks to undermine. Dkt. 77-1 (Plaintiff's Statement of Uncontroverted Facts) ¶ 23.

Plaintiff's next alleged "gap" in the chain-of-title, which is that Jet Set assigned its rights to Trans-American Films, Ltd. rather than to Defendant Trans-American, misrepresents the content of the agreements and trademark records at issue. First, the various iterations of the name "Trans-American" are not "different companies" and "separate judicial entities" as Plaintiff misleadingly claims. Dkt. 82 (Plaintiff's Reply Brief) § II(G) p. 14.[7]

Plaintiff then seeks to further muddy the waters by stating that "Defendants' failed to include an assignment of any Bloodsport assets from [the Cayman Islands entity] to [Defendant Trans-American]. Dkt. 82 (Plaintiff's Reply Brief) § II(G) p. 14, fn. 5. However, the Declaration of Teresa Lee in Support of Defendants' Opposition (the "Lee Declaration") clearly states that the Cayman Islands entity was converted to a Delaware corporation, Defendant Trans-American. Dkt. 79-45 (Lee Declaration), ¶ 27. This fact is undisputed, as publicly available PTO records show that the Cayman Islands entity "Trans-

---

[7] The record shows that at the time of the rights assignments at issue, there was only one legal entity doing business under variations of the name "Trans-American":

> Option/Purchase Agreement (the "Agreement"), dated as of March 24, 2010, between Edward R. Pressman Film Corporation ("Purchaser") on one hand and **Trans-American Films International, a Cayman Islands company, doing business as Trans-American Films, Inc., Trans American-Films, Ltd., Trans American Film, Ltd., and any and all other names by which said entity would be known ( collectively, "Trans American")** and Bloodsport New Beginning LLC ("BNB") on the other hand with respect to the motion picture project currently entitled "Bloodsport" which is to be a sequel of the Prior Pictures ( as such term is defined below). Trans American and BNB shall be collectively referred to herein as "Owner."

Dkt. 79-19 (Exhibit "S" to the First Kernan Decl.), p. 1 (emphasis added). Although Plaintiff seeks to mislead as to the business names used in each agreement, the record unambiguously shows that Jet Set transferred the rights at issue to a single Cayman Islands entity known by multiple "dba" names, including "Trans-American Films, Ltd" and "Trans-American Films International." *See* Dkt. 79-18 (Exhibit "R" to the First Kernan Decl.).

American Films International" (which properly applied for various BLOODSPORT trademarks) was domesticated and converted into Defendant Trans-American, a Delaware Corporation, on October 9, 2014 (a fact which the PTO was made aware of on May 10, 2021). *See* Defendants' Request for Judicial Notice filed concurrently, Ex. "A".

Plaintiff seeks to use the complexity of the chain of title to attempt to create confusion, even though Plaintiff conceded in his original Motion that there was no issue with the chain of title. The fact that the chain of title is complex does not mean that it is unclear. Plaintiff's alleged "gaps" in the chain of title are simply a red herring to confuse the Court, and are easily clarified. To summarize, (1) MGM only retained limited ownership of the actual *Bloodsport* film, and sold all other rights via the 1992 MGM option, (2) the rights under the MGM option were first transferred to Transcontinental Cinema Group, LLC, and then to FM Entertainment, (3) FM Entertainment later assigned its rights to Jet Set, (4) Jet Set later assigned its rights to Trans-American Films, Ltd., a Cayman Islands entity doing business under various names including "Trans-American Films International," (5) the Cayman Islands entity properly applied for various BLOODSPORT trademarks, and (6) the Cayman Islands entity was domesticated and converted to a Delaware Corporation (Defendant Trans-American).

### 3. <u>Plaintiff does not have "Priority of Use in Commerce" of the Bloodsport Trademark</u>

Plaintiff's argument for priority of use has so many holes it is difficult to know where to begin. First, Plaintiff had no use in commerce.  He had only a script. It is well settled that the title of a book or script cannot be a trademark, unless there is a series.[8] Plaintiff had no series - he had one script. Second,

---

[8] But, it is important to note that the only case that Plaintiff could locate in the thousands of cases holding that one film cannot be trademarked is the "Top Gun" case, and in that case, it was not just one film. They were massive licensing businesses going on in addition to the film.

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

Plaintiff gave away all the rights. Third, Plaintiff never used the script in commerce. He never distributed his script to the public.  There is no evidence of public distribution of his script.

The only case Plaintiff cites in reply on priority of use, *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 1126 (9th Cir. 2006), does not support Plaintiff's arguments.  In fact, it helps Defendants. That case plainly explained that there must be a:

> **"'[u]se in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.' "** (Citation.) The State, however, offers no evidence tending to show that it adopted and commercially used the marks CASA DE PICO and CASA DE BANDINI "in a way sufficiently public to identify or distinguish" its recreational and tourism services "**in an appropriate segment of the public mind**" as activities conducted by the State.

*Id.* at 1126 (Emphasis added).  Here, it is undisputed that the first film was put into commerce by Cannon (not Plaintiff) and the public identify the first film and the name Bloodsport with Cannon, Defendants' predecessor in interest.  The latter films, Bloodsport II, III, and IV were all produced and distributed in the market by Defendants' predecessor entities, not Plaintiff.  Like the State in *Dep't of Parks & Recreation for State of Cal.,* Plaintiff has presented no evidence of priority of use at all.  In fact, he has not even had anyone testify that his script went to anyone but Cannon.

### 4. Plaintiff Failed to Present Evidence to Rebut the Presumption that Defendants' BLOODSPORT trademarks are Valid

Defendants' properly registered BLOODSPORT trademarks give Defendants many legal benefits and protections. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2297 (2019); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015). Indeed, Defendants' trademark registrations constitute "prima facie evidence of the validity of the registered mark and of the registration of the mark,

1  of [Defendants'] ownership of the mark, and of [Defendants'] exclusive right to

2  use the registered mark in commerce." 15 U.S.C.A. § 1115(a).

3      Here, Plaintiff has provided no evidence that Defendants' BLOODSPORT

4  trademarks are not valid and failed to address or rebut the presumption that

5  Defendants' BLOODSPORT marks are valid.  Therefore, Defendants are entitled

6  to Summary Judgment.

7          **5.  There was no Abandonment and this Argument Fails**

8      The word "abandonment" does not appear in Plaintiff's

9  complaint.  Plaintiff has made no affirmative claim or affirmative defense for

10  "abandonment," so he cannot generate it now. Rather, he has made judicial

11  admissions that there is, in fact, a <u>continued use in commerce</u>, so he cannot take a

12  contradictory position.  Paragraph 66 of his complaint states:

13      "Defendants' unauthorized registration and <u>use in commerce</u> of
       Plaintiff's "Bloodsport" mark in connection with the production,
14      distribution, advertising, promotion, and offering for sale of films is
       likely, if not certain, to cause confusion, mistake, or deception as to
15      the affiliation or connection of Defendants with Plaintiff and/or
       Plaintiffs licensees as to the origin, sponsorship, association, or
16      approval of Defendants' infringing films."

17  (Complaint, ¶ 66).[9]

18      In any case, Plaintiff submitted no evidence, nor any uncontroverted facts

19  concerning "abandonment."  Plaintiff would need to submit to the Court all of the

20  documents from the PTO.  Defendants' Opposition documents certainly address

21  abandonment.  The documents filed with the PTO attached to the Lee declaration

22  and the Lee Declaration itself presents evidence of the use at issue filed with the

23  PTO.  In addition to all the PTO documents attached to the Lee Declaration, there

24  are two statements of use filed with the PTO.  One statement of use was filed on

25  November 16, 2018, which was accepted by the PTO.  (Lee Decl., ¶ 24, Ex.

26

27      [9] Additionally, Paragraph 82 states Defendants are "<u>continuing [our] unauthorized use</u>
    <u>in commerce</u> of the "Bloodsport" mark [that] dilutes ... Plaintiff's mark".  (*See also* Paragraph
28  87.)

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

"Y").  Additionally, another statement of use was filed on December 7, 2021, which was accepted by the PTO.  (Lee Decl., ¶ 28, Ex. "BB").  The statements of use allege use in commerce of Trans-American's mark since its 2015 and 2019 registrations.  There is simply no basis to claim abandonment and this evidence was submitted in opposition.  Defendants have submitted evidence in support of their Opposition and Motion for Summary Judgment, while Plaintiff has submitted no evidence, just argument and opinions of Plaintiff and his counsel.

### III.    CONCLUSION

For the foregoing reasons, summary judgment and/or partial summary judgment should be granted in favor of Defendants on all of Plaintiff's causes of action, and Plaintiff's action should be dismissed with prejudice.

Dated: January 5, 2024                    THE KERNAN LAW FIRM


By:___/s/ *S. Michael Kernan*__
        S. Michael Kernan
Attorney for Defendants
Alberto Lensi and Trans-American
Films International Corporation

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

## <u>CERTIFICATION OF WORD COUNT</u>

I HEREBY CERTIFY that this brief contains less than 6,000 words, which complies with the word limit set by the Court's Order dated October 25, 2023.  Counsel relies on the word count of the word processing program used to prepare this brief.

Dated: January 5, 2024                    THE KERNAN LAW FIRM


By:___/s/ *S. Michael Kernan*___
            S. Michael Kernan
            Attorneys for Defendants
            Alberto Lensi and Trans-American
            Films International Corporation

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777

16

1

## **PROOF OF SERVICE**

2

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

3

4

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 9663 Santa Monica Boulevard, Suite 450, Beverly Hills, California 90210.

5

On January 5, 2024, I served the foregoing document(s) described as:

6

7

**DEFENDANTS' SUR-REPLY TO NEW ARGUMENTS RAISED BY PLAINTIFF FOR THE FIRST TIME ON REPLY AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

8

9

10

on the interested parties to this action as follows:

11

X      (BY ECF SERVICE) I caused such documents to be delivered via electronic ECF through the Court's system to counsel as follows;

12

13

MarcToberoff,
mtoberoff@toberoffandassociates.com

14

TOBEROFF & ASSOCIATES, P.C.

23823 Malibu Road, Suite 50-363

15

Malibu, CA 90265

16

17

X      (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States that the above is true and correct.

18

19

Executed January 5, 2024, at Los Angeles, California.

20

21

_____/s/ R. Paul Katrinak_____
R. Paul Katrinak

22

23

24

25

26

27

28

THE KERNAN LAW FIRM
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
(310) 490-9777