Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK DISALLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTO LENSI, an individual;<br>TRANS-AMERICAN FILMS<br>INTERNATIONAL<br>CORPORATION, a Delaware<br>corporation, and DOES 1-10,<br><br>Defendants. | Case No. 22-cv-02152-SSS-PVCx<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION RE: ORDER DENYING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT [DKT. 99]**<br><br>**Hearing Date:** June 28, 2024<br>**Time:** 2:00 pm<br>**Judge:** Hon. Sunshine S. Skyes |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    LEGAL STANDARD ............................................................................2

III.   ARGUMENT..........................................................................................4

     A.    The Court Correctly Found that Defendants Did Not Satisfy
            Their Evidentiary Burden on Summary Judgment............................4

     B.    Defendants Cannot Obtain Relief Based on Their
            Erroneous Belief That Damages Are Part of
            Plaintiff's Prima Facie Case ............................................................6

     C.    Plaintiff Never Abandoned His Trademark Dilution Claim .............8

     D.    Defendants' Made-Up Expert Witness Requirement
            Is Also Not A Basis For Reconsideration. ........................................9

     E.    Defendants' Pandering Regarding Settlement is Inappropriate .......12

     F.    If the Court Is Inclined to Re-Open Its Order, Plaintiff
            Requests Clarification ....................................................................14

          1.    DiSalle's Retention of Remake Rights in His
               "Bloodsport" Screenplay ........................................................14

          2.    Defendant Trans-American Films International Corporation
               Failed to Provide Any Evidence Resolving the Four
               Major Gaps in its Alleged Chain-of-Title to Bloodsport
               I-IV Underlying its Alleged Rights and Trademarks..............16

IV.    CONCLUSION ....................................................................................19

1
2

# <u>TABLE OF AUTHORITIES</u>

3

<u>Cases</u>

4

**Pages**

5
6

*389 Orange St. Partners v. Arnold,*
    179 F.3d 656 (9th Cir. 1999) .............................................................................3

7
8

*Aqua Connect v. Code Rebel, LLC,*
    No. CV 11-5764, 2013 WL 3820544 (C.D. Cal. July 23, 2013) ......................5

9
10

*Barone v. L.A. Cnty. Sheriff's Dep't,*
    No. CV 21-4200, 2023 WL 8042740 (C.D. Cal. Oct. 27, 2023) ...................13

11
12

*Beaver v. Tarsadia Hotels,*
    29 F. Supp. 3d 1294 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016).....6

13
14

*Bur-Tex Hosiery Inc. v. World Tech Toys Inc.,*
    No. CV 22-7547, 2023 WL 4680333 (C.D. Cal. June 6, 2023)...............*passim*

15
16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ....................................................................................5, 19

17
18

*Clarex Ltd. v. Natixis Sec. Am. LLC,*
    No. CV 12-0722, 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) ...................19

19
20

*Clark v. Coats & Clark, Inc.,*
    929 F.2d 604 (11th Cir. 1991)..........................................................................5

21
22

*Coleman v. Wal-Mart Stores E., LP,*
    No. CV 22-0054, 2023 WL 7132938 (E.D. Ky. Oct. 30, 2023) ......................11

23
24

*DC Comics v. Towle,*
    802 F.3d 1012 (9th Cir. 2015)..........................................................................15

25
26

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
    967 F.2d 1280 (9th Cir. 1992).........................................................................8

27
28

*Eastman Kodak Co. v. Image Technical Services, Inc.,*
    504 U.S. 451 (1992) .........................................................................................9

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*Edgar Rice Burroughs, Inc. v. Metro-Goldwyn-Mayer, Inc.*,
   205 Cal.App.2d 441 (2d Dist. 1962) ...................................................16

*Evo Bands, LLC. v. Al Khalifa Grp.*,
   657 F. Supp. 3d 1312 (C.D. Cal. 2023)..................................................6

*GCP Applied Techs. Inc. v. AVM Indus., Inc.*,
   No. CV 19-7475, 2022 WL 20273274 (C.D. Cal. Dec. 20, 2022) .......... 3-4, 13

*Gould, Inc. v. A&M Battery & Tire Service*,
   954 F. Supp. 1020 (M.D. Pa. 1997) ............................................... 12-13

*Gray v. Golden Gate National Recreational Area*,
   866 F. Supp. 2d 1129 (N.D. Cal. 2011) ..................................................7

*Heinemann v. Satterberg*,
   731 F.3d 914 (9th Cir. 2013)................................................................8

*Henry v. Gill Indus., Inc.*,
   983 F.2d 943 (9th Cir. 1993)................................................................4

*Hoover v. Switlik Parachute Co.*,
   663 F.2d 964 (9th Cir. 1981)................................................................5

*Icon Desert Logistics v. City of Blythe Police Dep't*,
   No. CV 20-2225, 2022 WL 1155359 (C.D. Cal. Apr. 18, 2022),
   *reconsideration denied*, 2022 WL 3013059 (C.D. Cal. May 4, 2022) ...........12

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981).............................................................13

*In re Rogstad*,
   126 F.3d 1224 (9th Cir. 1997)..............................................................5

*Interstellar Starship Servs., Ltd. v. Epix Inc.*,
   184 F.3d 1107 (9th Cir. 1999).............................................................12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*It's a 10, Inc. v. Beauty Elite Grp., Inc.*,
No. CV 13-60154, 2013 WL 6834804 (S.D. Fla. 2013) ...................................7

*Kalani v. Starbucks Corp.*,
81 F. Supp. 3d 876 (N.D. Cal. 2015),
*aff'd*, 698 F. App'x 883 (9th Cir. 2017) ...............................................................5

*Karlsson v. Sherman*,
No. CV 19-6104, 2024 WL 2209796 (C.D. Cal. Apr. 10, 2024)................... 3-4

*Ketab Corp. v. Mesriani Law Grp.*,
No. CV 14-7241, 2015 WL 2084469 (C.D. Cal. May 5, 2015)........................6

*Kona Enters., Inc. v. Est. of Bishop*,
229 F.3d 877 (9th Cir. 2000) ..........................................................................2

*Natsuhara v. Bank of Missouri*,
No. CV 22-0908, 2024 WL 1435262 (C.D. Cal. Mar. 14, 2024) ............ 3-4, 10

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
210 F.3d 1099 (9th Cir. 2000).................................................................*passim*

*Nissan Motor Co., Ltd. v. Nissan Comput. Corp.*,
89 F. Supp.2d 1154 (C.D. Cal. 2000)..............................................................6

*Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*,
682 F. Supp. 3d 815 (C.D. Cal. 2023).................................................... 9, 11-12

*Orgain Inc. v. Northern Innov. Holding Corp.*,
No. CV 18-1253, 2021 WL 6103528 (C.D. Cal. Sep. 29, 2021)......................3

*Polk v. Gen. Motors LLC*,
No. CV 20-0549, 2024 WL 326624 (M.D. Fla. Jan. 29, 2024) ......................11

*Prescott v. United States*,
No. CV 07-1923, 2011 WL 13185998 (D.C. Ariz. July 27, 2011).................11

# TABLE OF AUTHORITIES

**Cases**

**Pages**

*Reflex Media, Inc. v. Chan*,
  No. SACV 16-0795, 2021 WL 5936912 (C.D. Cal. June 4, 2021) ..................8

*Reliance Hosp. LLC v. ASNL Inc.*,
  No. CV 21-1970, 2023 WL 5278679 (D. Ariz. Aug. 16, 2023) .......................4

*S10 Ent. & Media LLC v. Samsung Elecs. Co.*,
  No. CV 21-2443, 2023 WL 1936350 (C.D. Cal. Feb. 1, 2023).....................12

*Safeway Stores, Inc. v. Rudner*,
  246 F.2d 826 (9th Cir. 1957)............................................................................7

*Salvitti v. Lascelles*,
  669 F. Supp. 3d 405 (E.D. Pa. 2023) .............................................................11

*Sams v. Cal. Dep't of Corr. & Rehab.*,
  No. CV 21-0493, 2021 WL 6618626 (C.D. Cal. Aug. 19, 2021) ....................4

*Smith v. Cnty. of Sacramento*,
  No. CV 19-1426, 2023 WL 6387149 (E.D. Cal. Sept. 29, 2023) ....................5

*Snap Inc. v. Vidal*,
  __ F. Supp. 3d ___, 2024 WL 1136407 (C.D. Cal. 2024) .............................12

*Stitch Editing Ltd. v. Tiktok Inc.*,
  No. CV 21-6636, 2022 WL 17348179 (C.D. Cal. Nov. 15, 2022) ..................8

*Strasters v. Weinstein & Riley PS*,
  500 F. App'x 682 (9th Cir. 2012).....................................................................8

*Taylor v. 947 LLC*,
  No. CV 21-1071, 2022 WL 18142546 (C.D. Cal. Oct. 11, 2022) ...................3

*Tokidoki, LLC v. Fortune Dynamic, Inc.*,
  No. CV 07-1923, 2008 WL 11338730 (C.D. Cal. May 27, 2008)...................5

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

## Cases

**Pages**

*Tortilla Factory, LLC v. United Nat. Foods, Inc.*,
   No. CV 17-7539, 2019 WL 4451230 (C.D. Cal. July 22, 2019) ......................7

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
   610 F.3d 1088 (9th Cir. 2010) ..........................................................................11

*Waite v. UMG Recordings, Inc.*,
   450 F. Supp. 3d 430 (S.D.N.Y. 2020)....................................................... 18-19

*Wood v. Ryan*,
   759 F.3d 1117 (9th Cir. 2014) ...........................................................................2

*Woulfe v. Universal City Studios LLC*,
   No. CV 22-0459, 2023 WL 3321752 (C.D. Cal. Mar. 9, 2023) ................... 6-7

*Zimmerman v. CSX Transp., Inc.*,
   No. CV 08-0144, 2009 WL 1407024 (S.D. Ind. May 15, 2009) ...................12

## Statutes, Rules and Regulations

17 U.S.C. § 204 ..................................................................................... 14, 16

28 U.S.C. § 1292 ..............................................................................................13

C.D. Cal. Local Rule 7-18 ......................................................................*passim*

Federal Rule of Civil Procedure 56 .......................................................*passim*

/ / /

/ / /

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

# TABLE OF AUTHORITIES

**Pages**

## Other Authorities

1, 2 Anne Gilson LaLaonde, *Gilson on Trademarks* (Matthew Bender ed.)

§ 2.05 ...................................................................................10

§ 5A.01 ................................................................................11

Fed. R. Civ. P. 56(e) Advisory Committee Notes (2010 Amendments)...............8

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 30:2.50 (5th ed. & 2024 Update)...................................................7

3, 6 Melville Nimmer & David Nimmer, *Nimmer on Copyright* (2023 rev. ed.)

§ 10.14 .................................................................................16

§ 23.07 .................................................................................15

Ninth Circuit Model Civil Jury Instruction No. 15.6 (Mar. 2024) .......................7

1 Thomas D. Selz et al., *Entertainment Law 3d: Legal Concept
and Business Practices* § 4:19 (2023) ..............................................16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

## I.      **INTRODUCTION**

Plaintiff Mark DiSalle ("DiSalle" or "Plaintiff") submits this memorandum in opposition to defendants Alberto Lensi ("Lensi") and Trans-American Films International Corporation's ("TFI") ("Defendants") Motion for Reconsideration ("Motion" or "Mot.") (Dkt. 100-1) of this Court's well-reasoned and thorough thirty-one-page Order Denying The Parties' Motions For Summary Judgment ("Order") (Dkt. 99).

Defendants once again demand to have the last word on the merits of the Parties' claims—now, over this very Court. Defendants' Motion is, by all counts, their *fourth* bite at the apple.[1]

Defendants seek reconsideration of the Court's denial of Defendants' motion for summary judgment as to Plaintiff's claims for common law trademark infringement, dilution and unfair competition.  The parties cross-moved for summary judgment on the claims of common law trademark infringement and unfair competition and Defendants alone sought summary judgment on Plaintiff's dilution claim. This Court denied both side's motions. As explained in greater detail below, the Court, in assessing Defendants' motion, properly viewed the evidence in the light most favorable to the non-moving party (Plaintiff), holding, after careful analysis, that Defendants failed to meet their evidentiary burden such that issues of fact prevented summary adjudication on Plaintiff's claims for common law trademark infringement, dilution, and

---

[1] As recounted in Plaintiff's Opposition to Defendants' Motion for Leave to File a Sur-Reply (Dkt. 85), "Defendants *far exceed[ed]* the word limitation in their [Summary Judgment] Opposition by filing an extra nearly 7,000-word brief in the guise of an attorney's declaration replete with legal argument." *Id.* at 1. This Court nonetheless generously permitted Defendants to file a Sur-Reply (Dkt. 92). The Sur-Reply improperly contained *new* legal arguments regarding so-called "life story rights" which this Court held unpersuasive. *See* Order at 17. Despite Defendants' serial filings, this Court rejected Defendants' contention "that DiSalle has no further rights in the *Bloodsport* franchise[.]" Order at 16.

unfair competition. Order at 24-25, 30.

Defendants' Motion brazenly flouts the narrow rules governing such motions for reconsideration, is unpersuasive, and needlessly multiplies these proceedings. It wastes the time and resources of this Court and the parties, improperly recycles arguments repeatedly made and rejected, and improperly uses such Motion to make meritless *new* arguments. By their own admission, Defendants bring this unsupported Motion to gain the upper hand in the parties' settlement negotiations, which is inappropriate in itself. *See* Mot. at 1.

The Motion purports to be made pursuant to Local Rule 7-18(c), which permits reconsideration based on "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered," while expressly prohibiting a moving party from "repeat[ing] any oral or written argument made in support of, or in opposition to, the original motion." Defendants' Motion fails on both counts. Defendants do not identify a single fact—much less a "material" one—that the Court failed to consider in ruling on the Parties' cross-motions for summary judgment, while rehashing its prior legal arguments in direct violation of Local Rule 7-18.

None of Defendants' purported bases for reconsideration satisfy the high threshold for granting such relief. The Motion should therefore be denied in its entirety, and Plaintiff's claims for common law trademark infringement, unfair competition, and dilution should proceed to trial, together with the parties' other causes of action. Defendants, in short, have had enough "bites at the apple."

## II.   <u>LEGAL STANDARD</u>

Reconsideration is "an extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Bur-Tex Hosiery Inc. v. World Tech Toys Inc.*,

2023 WL 4680333, at *1 (C.D. Cal. June 6, 2023) (citation omitted). "Motions for reconsideration are disfavored and [ ] rarely granted for obvious reasons: litigation could be prolonged indefinitely if the parties were permitted to challenge the accuracy of every interlocutory order." *Orgain Inc. v. Northern Innov. Holding Corp.*, 2021 WL 6103528 at *3 (C.D. Cal. Sep. 29, 2021) (citation omitted); *see also Taylor v. 947 LLC*, 2022 WL 18142546, at *1 (C.D. Cal. Oct. 11, 2022) ("Motions for reconsideration are disfavored and should be granted only in rare circumstances.") (citations omitted).

"In the Central District of California, 'motions for reconsideration are governed by Local Rule 7-18.'" *Natsuhara v. Bank of Missouri*, 2024 WL 1435262, at *8 (C.D. Cal. Mar. 14, 2024) (citation omitted). Local Rule 7-18 authorizes only three grounds upon which a motion for reconsideration may be brought, none of which exist here:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or
>
> (b) the emergence of new material facts or a change of law occurring after the Order was entered, or
>
> (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18.

"The movant bears the burden of proving that reconsideration is proper." *GCP Applied Techs. Inc. v. AVM Indus., Inc.*, 2022 WL 20273274, at *1 (C.D. Cal. Dec. 20, 2022) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (noting that it was the movant's burden "to establish that the district court committed clear error")). "Moreover, 'unhappiness with the outcome' is not a valid basis for reconsideration. Indeed, 'no motion for

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.'" *Karlsson v. Sherman*, 2024 WL 2209796 (C.D. Cal. Apr. 10, 2024) (brackets omitted) (quoting L.R. 7-18; *Sams v. Cal. Dep't of Corr. & Rehab.*, 2021 WL 6618626, at *4 (C.D. Cal. Aug. 19, 2021)); *see also GCP Applied Techs.*, 2022 WL 20273274, at *2.

"In [] a motion for reconsideration, a party may not merely urge the court to reconsider past arguments or present new arguments it failed to make prior to the issue of an order." *Bur-Tex Hosiery*, 2023 WL 4680333, at *1 (citation omitted); *see also Natsuhara*, 2024 WL 1435262, at *8 ("A party may not raise new arguments or present new evidence if it could have reasonably raised them earlier.") (citation omitted) (denying motion for reconsideration).

## III.   ARGUMENT

### A.   The Court Correctly Found that Defendants Did Not Satisfy Their Evidentiary Burden on Summary Judgment.

In denying Defendants' motion for summary judgment on the three subject claims, this Court correctly identified and applied the well-settled standard of law Defendants were required (but failed) to satisfy. *See, e.g.,* Order at 7-8, 24-25, 30.

"If a moving party without the ultimate burden of persuasion at trial 'fails to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense,' it does not carry its initial burden of production for summary judgment." *Reliance Hosp. LLC v. ASNL Inc.*, 2023 WL 5278679, at *10 (D. Ariz. Aug. 16, 2023) (quoting *Nissan Fire & Marine Ins. Co., Ltd.* v. *Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000)); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues.").

Similarly, a moving party cannot meet its burden "simply by saying that

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105 (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991) ("Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial.")); *see also Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2008 WL 11338730, at *6 (C.D. Cal. May 27, 2008) (defendant's conclusory statement that plaintiff "has not produced evidence" is "insufficient to demonstrate an absence of triable issue"). "If a moving party", like Defendants here, "fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–03; *see also Aqua Connect v. Code Rebel, LLC*, 2013 WL 3820544, at *3 (C.D. Cal. July 23, 2013) ("Even where no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient.") (citing *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 967 (9th Cir. 1981)).

"A defendant's conclusory denial of wrongdoing fails to satisfy the threshold requirements of Rule 56." *Aqua Connect*, 2013 WL 3820544, at *3 (citing *In re Rogstad*, 126 F.3d 1224, 1227 (9th Cir. 1997)); *see also, e.g., Smith v. Cnty. of Sacramento*, 2023 WL 6387149, at *4 (E.D. Cal. Sept. 29, 2023) ("The only evidence Defendant presents is … a self-serving declaration, which the Court finds insufficient to demonstrate the absence of a genuine issue of material fact.") (citation omitted); *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 882-83 (N.D. Cal. 2015), *aff'd*, 698 F. App'x 883 (9th Cir. 2017) ("Conclusory opinions" are "an insufficient basis on which to grant summary judgment.").

Thus, the conclusory, self-serving statements and opinions in Lensi and his counsel's declarations, relied upon on summary judgment and in their unsupported Motion, are wholly insufficient to satisfy Defendants' evidentiary

burden to show the absence of material issues of fact. *See e.g.*, Declaration of Alberto Lensi ("Lensi Decl.") ¶¶ 7-8 (Dkt. 79-41) ("7. Nothing I or my company have done has diluted the quality of the BLOODSPORT mark."); Mot. at 1-2 ("Defendants had the testimony of Mr. Lensi who said he did not do anything wrong."); *id.* at 3 ("Mr. Lensi testified that he did nothing to dilute the quality of the Bloodsport mark.") (citing Lensi Decl., ¶ 7); *id.* at 4 (same); *see also* Plaintiff's Objections (Dkt. 82-5 at 7) (objecting to Lensi Decl. ¶ 7 as irrelevant, inadmissible legal conclusion and improper opinion).

## B.  Defendants Cannot Obtain Relief Based on Their Erroneous Belief That Damages Are Part of Plaintiff's Prima Facie Case.

Defendants contest this Court's ruling that proof of damages "is not an enumerated element of common law trademark infringement or unfair competition." Order at 25 (citing *Nissan Motor Co., Ltd.* v. *Nissan Comput. Corp.*, 89 F. Supp.2d 1154, 1163 (C.D. Cal. 2000); *Evo Bands, LLC. v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1324–25 (C.D. Cal. 2023)). Yet, disagreement with a Court's ruling is *not* a sufficient basis for seeking reconsideration. *See*, *e.g.*, *Ketab Corp. v. Mesriani Law Grp.*, 2015 WL 2084469, at *3 (C.D. Cal. May 5, 2015) ("An argument that the Court's decision is 'simply wrong' is not a permissible ground for reconsideration under Local Rule 7-18."); *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1301-02 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016) (citation omitted) ("A motion for reconsideration cannot be used to ask the Court to rethink what the Court has already thought through merely because a party disagrees with the Court's decision.").

"A court should not experience déjà vu when reviewing a motion for reconsideration. Here, [Defendants'] motion attempts to recycle arguments that the Court already considered and rejected. This alone should be a basis for denying the motion." *Woulfe v. Universal City Studios LLC*, 2023 WL 3321752,

at *1 (C.D. Cal. Mar. 9, 2023) (citing *Tortilla Factory, LLC v. United Nat. Foods, Inc.*, 2019 WL 4451230, at *2 (C.D. Cal. July 22, 2019); *Gray v. Golden Gate National Recreational Area*, 866 F. Supp. 2d 1129, 1132 (N.D. Cal. 2011).).

Furthermore, Defendants are the ones who got it wrong: proof of "damages" is simply *not* required to make out a prima facie case for common law trademark infringement, unfair competition, or dilution. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:2.50 (5th ed & 2024 Update); *Safeway Stores, Inc. v. Rudner*, 246 F.2d 826, 829 (9th Cir. 1957) ("It is likewise immaterial, if true, that, up to the time of the trial, [plaintiff] had suffered no actual loss or damage as a result of [defendant's] use of the trade name 'Safeway'"); *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, 2013 WL 6834804 at *3 (S.D. Fla. 2013) ("The Court rejects Defendant's contention that an absence of actual damages dooms Plaintiff's trademark claim, as the claim does not require a showing of actual damages.").

The Court's ruling is firmly established in the Ninth Circuit as evidenced by the clear citations provided by the Court. *See supra* (quoting Order at 25). Likewise, the Ninth Circuit's Model Civil Jury Instruction for trademark infringement, No. 15.6 (Mar. 2024), does not include a damages element. The comments to the jury instruction makes the omission explicit by providing the following quotation:

> "In trademark cases, it is not necessary for plaintiff to prove actual damage or injury to state a prima facie case of infringement. Injunctive relief does not require that injury be proven. . . All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:2.50 (5th ed. 2019).

*Id.* This statement of black-letter law applies to all of Plaintiff's trademark claims. As pointed out by this Court, "the elements of the two claims are

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

identical[.]" Order, at 20 (citing *E.&J. Gallo Winery v. Gallo Cattle Co.*, 967
F.2d 1280, 1288 (9th Cir. 1992)); s*ee also*, *e.g.*, *Stitch Editing Ltd. v. Tiktok Inc.*,
2022 WL 17348179, at *4 (C.D. Cal. Nov. 15, 2022) ("Although trademark
infringement, false designation of origin, and unfair competition are three
distinct claims, their essential elements are identical") (quoting *Reflex Media,
Inc. v. Chan*, 2021 WL 5936912, at *10 (C.D. Cal. June 4, 2021)).

Finally, even if damages were an element of Plaintiff's prima facie case
for these claims (it is not), Defendants would still not prevail on summary
judgment. This Court provided an alternative basis for its ruling, "not[ing] that
Defendants' argument [regarding damages] would fail because of the failure to
identify evidence from which the Court could find a lack of evidence." Order at
25 n.15 (citation omitted); *see also id.* at 30 (holding that Defendants failed to
meet their burden of production with respect to the dilution claim as well).

### C.    Plaintiff Never Abandoned His Trademark Dilution Claim.

Defendants next attempt to argue that Plaintiff abandoned his dilution
claim by not arguing it in his reply brief. Yet, at no time did Plaintiff or his
counsel suggest, let alone state, that Plaintiff was withdrawing any of his claims.
As the Court correctly found, Defendants failed to meet their evidentiary burden
on Defendants' cross-motion for summary judgment (Order at 30). It is
axiomatic that summary judgment cannot be granted if the moving party has not
met its burden of proof, regardless of the other party's opposition: "[S]ummary
judgment cannot be granted by default *even if there is a complete failure to
respond to the motion*[.]" Fed. R. Civ. P. 56(e), 2010 Amendment, Advisory
Committee Notes (emphasis added) (cited with approval in *Strasters v.
Weinstein & Riley PS*, 500 F. App'x 682, 683 (9th Cir. 2012) (reversing grant of
summary judgment where party failed to address issue in opposition brief) and
*Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013) (ruling that "a
motion for summary judgment may not be granted based on a failure to file an

opposition to the motion, regardless of any local rule that suggests the contrary.")).

As the Court correctly noted in its Order, only Defendants moved for summary judgment on the dilution claim; Plaintiff did not. Order at 11, 30. Thus, all reasonable inferences from the record should be drawn in Plaintiff's favor in evaluating the propriety of Defendants' summary judgment motion, as the Court correctly did. *See Eastman Kodak Co. v. Image Technical Services, Inc.* 504 U.S. 451, 456 (1992). Here, the summary judgment filings demonstrated questions of fact regarding dilution. Defendants failed to meet their burden on summary judgment as they did not point the Court to facts or evidence showing that Plaintiff would not be able to make out a claim for dilution. And as stated, it is far too late for Defendants to try to remedy their summary judgment motion's deficiencies. *See City of Fresno v. United States*, 709 F. Supp. 2d 888, 926 (E.D. Cal. 2010) (citing *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)) ("In this Circuit, matters not presented in the original briefing are not considered on a motion for reconsideration."). Defendants, in short, have no grounds for reconsideration.

**D.    Defendants' Made-Up Expert Witness Requirement Is Also Not a Basis for Reconsideration.**

Defendants claim this Court reached the wrong conclusion because, in their view, expert witness testimony is "required" for Plaintiff's claims. (Mot. at 2-3, 6-9). But to be clear, no such "requirement" exists for the three trademark causes of action which are the subject of Defendants' Motion, nor for the constituent elements that comprise those claims.

In an effort to create a requirement for expert testimony, Defendants refer to the portion of the Court's Order analyzing acquired distinctiveness (also known as "secondary meaning"). *See* Order at 20-25. But as this Court explained, a plaintiff may demonstrate that its unregistered mark has acquired

secondary meaning through either direct <u>or</u> indirect evidence. *See id.*; *see also Opulent Treasures, Inc. v. Ya Ya Creations, Inc.*, 682 F. Supp. 3d 815, 823 (C.D. Cal. 2023) (Sykes, J.). And as the Court correctly noted, "no single factor or type of evidence [e.g. expert testimony] is dispositive of this analysis[.]" Order at 21. *See also* 1 Anne Gilson LaLaonde, *Gilson on Trademarks* § 2.05[6] (Matthew Bender ed.) ("Some courts find expert testimony on the issue of whether a trademark is distinctive to be of little use.") (collecting cases).

Defendants improperly level this new argument in a motion for reconsideration and, to do so, misrepresent their prior summary judgment briefing (*see* Mot. at 7-8). But Defendants never argued on summary judgment that expert testimony was required *to prove secondary meaning*. Defendants simply argued (without authority) that Plaintiff did not furnish expert testimony "to quantify his alleged [trademark] ***damages***" and dilution. Dkt. 79 (Defendants' Opposition) at 24-25, 29-30 (emphasis added). Again, a motion for reconsideration is not a vehicle for a party to try out new arguments not made previously. *Bur-Tex Hosiery*, 2023 WL 4680333, at *1; *see also Natsuhara*, 2024 WL 1435262, at *8 ("A party may not raise new arguments or present new evidence if it could have reasonably raised them earlier.") (denying motion for reconsideration).

Yet, even if Defendants had argued that expert testimony is required to prove secondary meaning (they did not), the case law they now cite, most of which is out of circuit, does not support their argument regarding the necessity of expert testimony in trademark cases. In fact, none of the cases Defendants misleadingly cite for this point are even trademark cases. Mot. at 9. And all are further distinguishable as in each, unlike here, expert testimony was absolutely *necessary as a matter of law* to prove an element of the plaintiff's prima facie

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

case.[2]

Defendants argue that expert testimony is required for damages. However, because damages is <u>not</u> a requisite prima facie element for Plaintiff's trademark claims (as shown in Section III.A. above), one can hardly argue, as Defendants repeatedly do, that a lack of expert testimony on damages is "fatal" to such claims. Mot. at 3, 7, 9.

Nor is expert testimony a prerequisite to Plaintiff's dilution claim. It is well settled that "a plaintiff seeking to establish a likelihood of dilution is not required to go to the expense of producing expert testimony or market surveys[.]" *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1091 (9th Cir. 2010); *see also* 2 *Gilson on Trademarks* § 5A.01[5] ("A plaintiff attempting to show likelihood of dilution may not need to produce surveys or expert testimony to that effect. … Expert testimony and survey evidence may only be needed 'in marginal cases' or to rebut a defendant's 'significant evidence' that dilution is 'unlikely,' according to the [Ninth Circuit].") (citing *Visa*, 610 F.3d 1088). Defendants self-serving, conclusory declaration—*e.g.*, "Mr. Lensi testified that he did nothing to dilute the quality of the Bloodsport mark" (Mot. at 3)—is a wholly insufficient basis for summary judgment. *See* discussion in Section III.A, *supra*; *see also Ya Ya Creations, Inc.*, 682 F. Supp. 3d at 826 ("Here, [defendant's] cursory arguments in support of summary judgment of [plaintiff's]

---

[2] In *Prescott v. United States*, 2011 WL 13185998, at *2 (D.C. Ariz. July 27, 2011), *Zimmerman v. CSX Transp., Inc.*, 2009 WL 1407024, *2 (S.D. Ind. May 15, 2009), *Coleman v. Wal-Mart Stores E., LP*, 2023 WL 7132938 (E.D. Ky. Oct. 30, 2023) and *Polk v. Gen. Motors LLC*, 2024 WL 326624 (M.D. Fla. Jan. 29, 2024) the plaintiff failed to *designate* an expert where expert testimony was *required* to prove an element of the plaintiff's prima facie case. In *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 411 (E.D. Pa. 2023) and *Zimmerman v. CSX Transp., Inc.*, 2009 WL 1407024, *2 (S.D. Ind. May 15, 2009) expert testimony was *necessary* to prove an element of the plaintiff's prima facie case, but its expert had been excluded.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

dilution claims are identical to those it raised in support of dismissal of the infringement claims. This superficial briefing… does little to direct the Court to the relevant deficiencies in [plaintiff's] case-in-chief.")

In conclusion, this Motion should never have been brought. "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Snap Inc. v. Vidal*, 2024 WL 1136407, at *2 (C.D. Cal. 2024) (quoting *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)). Defendants failed to meet their burden on summary judgment, plain and simple. They cannot now make up non-existent requirements as a means of resuscitating their moribund summary judgment motion. Substantive and practical considerations dictate that Plaintiff's claims, including the subjects of Defendants' Motion, should proceed to trial. *See*, *e.g.*, *Ya Ya Creations, Inc.*, 682 F. Supp. 3d at 826 ("Although the Court remains skeptical that [plaintiff] will be able to persuade the jury of its marks' fame so as to prevail on its dilution claim at trial, it is apparent that [defendant] has failed to carry its initial burden on summary judgment.") (Sykes, J.); *S10 Ent. & Media LLC v. Samsung Elecs. Co.*, 2023 WL 1936350, at *5 (C.D. Cal. Feb. 1, 2023) (citing *Icon Desert Logistics v. City of Blythe Police Dep't*, 2022 WL 1155359, at *9 (C.D. Cal. Apr. 18, 2022), *reconsideration denied*, 2022 WL 3013059 (C.D. Cal. May 4, 2022)).

**E.    Defendants' Pandering Regarding Settlement is Inappropriate.**

Finally, Defendants' expressly stated goal, that this Court should re-write its ruling on summary judgment, so that Defendants may have a better settlement bargaining position, is inappropriate and should not be countenanced. Mot. at 1. In *Gould, Inc. v. A&M Battery & Tire Service*, for instance, the defendants tried the same tact which the court entirely rejected: "While settlement negotiations may follow the grant or denial of summary judgment, the court's focus is on the question of the existence of material fact disputes." 954 F.

Supp. 1020, 1022 (M.D. Pa. 1997); s*ee also, e.g., Pierce v. F.R. Tripler & Co*., 770 F. Supp. 118, 123 (S.D.N.Y. 1991), *aff'd in part, rev'd in part on other grounds*, 955 F.2d 820 (2d Cir. 1992) (imposing Rule 11 sanctions on party for repeatedly referencing settlement negotiations in summary judgment briefing); *Hodge v. Am. Home Assur. Co.,* 150 F.R.D. 25, 27 (D.P.R. 1993) (declaring a mistrial after counsel referenced opposing party's decision not to settle in opening statement). Even if settlement were relevant (it is not), quite the opposite of what Defendants assert is true, as potential damages and the specter of a trial on the claims does far more to motivate reasonable settlement than removing any exposure to damages, as Defendants seek. No matter the terms of any potential settlement, and, indeed, regardless of whether settlement is reached, Defendants have not met their heavy burden on summary judgment, nor in moving for reconsideration.

Defendants' threats of an "interlocutory appeal" pursuant to 28 U.S.C. § 1292(b) are equally unsupported. "Considering that 'section 1292(b) is to be applied sparingly and only in exceptional cases," Defendants cannot "sustain [their] burden [of] demonstrating that all three § 1292(b) requirements have been met and that certification is appropriate." *Barone v. L.A. Cnty. Sheriff's Dep't*, 2023 WL 8042740, at *3 (C.D. Cal. Oct. 27, 2023) (Skyes, J.) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)); *see also GCP Applied Techs.*, 2022 WL 20273274, at *5 (The motion for reconsideration "fail[s] to establish that the criteria are met for such an [interlocutory] appeal; but even if the criteria had been established, the Court would decline to exercise its discretion in certifying such an appeal.") (collecting cases). Among other things, granting an interlocutory appeal "will further delay resolution of this action and result in unnecessary trouble and expense." *Barone*, 2023 WL 8042740, at *3.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

**F.**      **If the Court Is Inclined to Re-Open Its Order, Plaintiff Requests Clarification.**

In the event the Court were inclined to re-open its Order, Plaintiff respectfully requests the following clarifications:

1.      DiSalle's Retention of Remake Rights in His "Bloodsport" Screenplay.

In its Order, the Court rightly held that DiSalle owned the copyright to the original screenplay entitled "Bloodsport," written by Sheldon Lettich, expressly as DiSalle's work-made-for hire (the "Screenplay"). Order at 18. The Court further correctly noted that a copyright in a literary work such as the Screenplay consists of a bundle of rights which may be separately assigned. *Id.* at 18-19. As set forth in Plaintiff's summary judgment briefing, any assignment of rights under copyright *must be in writing*, 17 U.S.C. § 204(a), and, as such, any such rights which are *not* expressly assigned are retained by the original copyright owner (here, DiSalle) as a matter of law. Dkts. 78-3 at 11-13, 17; 82 at 1-5. The substantial record evidence presented by DiSalle, which closely tracked the chain-of-title to the specific rights transferred by DiSalle, demonstrated that DiSalle never assigned *remake* rights in his Screenplay to *any* of Defendants' alleged predecessors (nor to anyone else). Dkts. 78-7, 78-8, 78-9, 78-11.

On summary judgment, Defendants were required to adduce evidence that that DiSalle assigned in writing his "remake" rights in his Screenplay, but they did not and could not do so. Thus, DiSalle (unlike Defendants, as discussed *supra*) presented substantial *evidence*, in the form of Defendants' alleged chain-of-title documents regarding "Bloodsport," affirmatively demonstrating Defendants' *lack of evidence* of any assignment of DiSalle's "remake" rights to Defendants (or to any alleged predecessor of Defendants) as required by the Ninth Circuit and this Court. *Nissan Fire*, 210 F. 3d at 1105-06; Order at 28-29.

While the above is more than sufficient for the Court to rule that DiSalle

retained "remake" rights in his Screenplay as a matter of law, DiSalle submitted additional evidence showing that Edward R. Pressman Film Corporation ("ERPFC") paid DiSalle significant sums to option and re-option his "remake" rights during a continuous period of over 10 years. Dkts. 78-24, 78-25 at 5-6, 11, 13, 15; Order at 4 (noting ERPFC's option of "DiSalle's remake rights"). As DiSalle further demonstrated, ERPFC did not act alone, but optioned DiSalle's "remake" rights pursuant to an express agreement with none other than Defendant Lensi. *See* Dkt. 78-23 at 2-3 (¶1).

Finally, the sole evidence and argument Defendants presented and wholly relied upon (belatedly, in a Sur-Reply no less) is that DiSalle could purportedly not exploit his "remake" rights in the Screenplay due to a 1985 agreement with Frank Dux regarding Dux's putative "life story rights." But the Court handily disposed of this argument. Order at 17 ("Defendants' argument fails because the Dux Agreement does not negate or limit the rights DiSalle holds in the DiSalle-Lettich Screenplay.") (citing 6 *Nimmer on Copyright* § 23.07 (Lexis 2024); *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015)); *see also id*. at 17 n.11 ("Defendants fail to explain how" "violations of the right to publicity and for false invasion of privacy" alter "DiSalle's rights in the DiSalle-Lettich Screenplay or why Defendants … would be able to avail themselves of the benefits of those torts and the Dux Agreement.").

While at times seeming to acknowledge "DiSalle's remake rights" (Order at 4, 17) the Court refrained from affirmatively ruling that DiSalle retained remake rights in his Screenplay's copyright solely because, in its view, "DiSalle fail[ed] to address what law this Court should apply" to a provision in a "1998 [*sic*] [1993] agreement" stating that DiSalle "warrant[s] and represent[s] that [he] own[s] the exclusive right to produce further sequels to the motion picture 'Bloodsport' and hereby grant[s] to us [Transcontinental Cinema Group, Inc.] the exclusive right to produce all such further sequels." [Dkt. 78-11 at 4]. Order

at 19-20. But whereas this might give rise to contract interpretation issues regarding the extent of "sequel" rights "to the motion picture 'Bloodsport'" it plainly does not include "remake" rights to DiSalle's Screenplay, which, as a matter of copyright law, *must explicitly* be assigned in writing. 17 U.S.C. § 204(a). "Sequel" and "remake" film rights are well known to be distinct rights in the bundle of rights comprising the copyright to a screenplay. 1 Selz, *Entertainment Law* 3d § 4:19; 3 *Nimmer on Copyright* § 10.14[F], [L]; *Edgar Rice Burroughs, Inc. v. Metro-Goldwyn-Mayer, Inc*., 205 Cal.App.2d 441 (2d Dist. 1962); Dkts. 78-3 at 13-14, 82 at 2-4. There is no contractual ambiguity regarding "remake" rights because the provision in question solely refers to "sequel" rights; and the Copyright Act preemptively requires that any transfer of rights be done expressly in writing.[3] Nowhere does the significant record evidence contain a written transfer by DiSalle of "remake" rights in his "Bloodsport" Screenplay as required by 17 U.S.C. § 204(a).

> 2. Defendant Trans-American Films International Corporation Failed to Provide Any Evidence Resolving the Four Major Gaps in its Alleged Chain-of-Title to Bloodsport I-IV Underlying its Alleged Rights and Trademarks.

As asserted by Defendants to both the USPTO, and to this Court on summary judgment, Defendant Trans-American Films International Corporation's ("**TFI**") alleged ownership and exploitation of a series of "Bloodsport" films (i.e., Bloodsport I-IV) was the purported basis for TFI's alleged trademark interests and TFI's trademark registrations.  The same chain-

---

[3] Furthermore, even if an actual "choice of law" issue had arisen (it did not) like in the two cases cited in the Order, the underlying film agreements in the record, all entered into in California, contain *California* choice of law provisions. *See* Dkt. 78-9 (MGM Option Agreement), ¶ 14 ("Applicable Law," stating agreement "shall be construed in accordance with laws of the State of California."); Dkt. 78-8 at 2 (Pathé Agreement), *id*., ¶ 17; Dkt. 78-7 (Cannon Agreement), ¶ 20(a).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

of-title is the basis for Defendants unsupported assertion that they have the rights to produce new "Bloodsport" films.

In Plaintiff's motion for summary judgment, he submitted Defendants' complete purported chain-of-title documents regarding *Bloodsport I-IV* (as did Defendants). Dkts. 78-5 to 78-11, 78-13, 78-17, 78-21. As repeatedly pointed out by Plaintiff, this *record evidence* demonstrated *four* glaring gaps in TFI's alleged chain-of-title to the "Bloodsport" films underlying its alleged trademarks and Defendants rights as follows:

*First*, the record evidence clearly showed that Defendants did *not* own the iconic film *Bloodsport* (1988)—the only movie with any real public awareness—MGM does. Dkt. 78-9 (MGM Option Agreement ("MGM Option"), 1 ("MGM shall retain all ownership rights in and to the Picture [*Bloodsport*]").

*Second*, Defendants rely on (i) the assignment dated December 8, 1993 from the Bloodsport II Company joint venture to FM Entertainment (Dkt. 78-10) and (ii) the assignment dated June 10, 1996 from FM to TFI. Dkt. 78-13; Kernan Decl., ¶ 26. But, whereas the Bloodsport II Company was originally intended as the assignee, it was <u>not</u> ultimately assigned the MGM Option. Instead, **Transcontinental Cinema Group, Inc**. ("**TCG**") was assigned the MGM Option in the assignment from Pyramid to TCG dated December 8, 1993. Dkt. 78-11. Defendants admitted that FM is a "company distinct from TCG" (Kernan Decl., ¶ 26), and effectively admitted this gap in their chain-of-title by their counsel asserting that "TCG [] immediately assigned [the "acquired MGM rights"] to FM" (*id*, ¶ 27) while not providing any admissible evidence of this *whatsoever*.

*Third*, in a Rights Assignment Agreement, back-dated "as of July 3, 2001", a slew of offshore companies, including TFI, purported to assign their rights to unidentified "Properties" ("more fully described in Exhibit 'A' " thereto) to Jet Set Aviation, Ltd. ("JSA"), another Cayman Islands company. Dkt. 79-17. But, the only copy of this supposed agreement in the record, is as

17

produced by Defendants (Dkt. 79-17 (Lensi 0432-0443)); it is not executed by JSA <u>and</u> Exhibit "A" (page 9) *was removed from the document Defendants produced.* Dkt. 79-17 (0436, 0439-0440).

Lastly, Defendants rely on a notarized Assignment, executed May 5, 2005, from JSA to a *different* company called "Trans American Film, Ltd." of all rights in *Bloodsport II-IV*. Dkt. 79-18. Tellingly, MGM's iconic *Bloodsport* (1988) film heavily relied upon by TFI in its trademark applications (Dkts. 78-28, 78-29) is not included, and even more importantly, **Trans American Film, Ltd**. is *not* TFI and Defendants failed to provide any assignment from this entity to TFI. Dkt. 79-18.

Thus, although MGM is the alleged successor to Cannon/Pathé, and Defendant TFI relies on the MGM Option for their alleged rights and trademarks, there are four very serious gaps in Defendants' purported chain-of-title underlying their alleged "Bloodsport" rights and trademarks. The MGM Option rights went to ***TCG***, not FM (Dkt. 78-11), and there is simply ***<u>no assignment from TCG to TFI</u>***. The alleged 2001 agreement with JSA in the record (produced by Defendants) purports to assign **unidentified** "Properties" (listed in a *removed* Exhibit "A" (page 9)) and is not fully executed. Dkt. 79-17. The subsequent 2005 assignment from JSA is **not to TFI,** but to yet another different entity (Trans-American Film, Ltd.). There is likewise **no assignment from Trans-American Film, Ltd. to TFI**.[4]

The different offshore companies comprising Defendant TFI's alleged chain-of-title are separate juridical entities. As held in the copyright context, "people cannot use a corporate structure for some purposes—e.g., taking

---

[4] Though overshadowed by the four other glaring deficiencies, Defendants also failed to include an assignment of any "Bloodsport" assets from TFI (Cayman Islands) to TFI (US). Defendants' Declaration of Teresa Lee attaches an exhibit for every other statement by her (Dkt. 79-45), but as to this, Lee just says that "[TFI(US)] is the successor to all of the assets of [TFI(CI),]" without an exhibit evidencing this. *Id*., ¶ 27.

advantage of tax benefits—and then disavow it for others." *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 441-42 (S.D.N.Y. 2020) (J. Kaplan); *see also Clarex Ltd. v. Natixis Sec. Am. LLC*, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012) ("Corporate form matters. Here, there were distinct legal entities, whose separate nature cannot simply be ignored when inconvenient.")

Here, again, Plaintiff presented an abundance of record evidence demonstrating Defendants' lack of admissible evidence and resolving the glaring deficiencies in TFI's alleged chain of title underlying Defendants' putative sequel and trademark rights in "Bloodsport." Defendants were given every opportunity to present such evidence on summary judgment but failed to do so. Accordingly, Plaintiff satisfied its evidentiary burden on summary judgment under *Nissan Fire*, 210 F. 3d at 1105-06, and thus pursuant to settled Ninth Circuit and Supreme Court precedent, would be entitled to a ruling in its favor on this subject. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Plaintiff consistently pointed to this key chain-of-title issue in its briefing (Dkts. 78-3 at 2-6, 16-18; 82 at 1-5, 12-14); however, the Court largely overlooked these very material facts and this issue in its Order. Plaintiff therefore respectfully requests that the Court clarify its Order by addressing this fundamental threshold issue to Defendants' claimed "Bloodsport" rights.

## IV.    **CONCLUSION.**

For all of the foregoing reasons, Defendants' Motion should be denied in its entirety.


DATED:  June 7, 2024                              TOBEROFF & ASSOCIATES, P.C.


                                                 By:  _/s/ Marc Toberoff_
                                                       Marc Toberoff

                                                 Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2        The undersigned counsel of record for Plaintiff, Marc DiSalle, certifies

3    that this brief contains 6,042 words, which complies with the word limit

4    of L.R. 11-6.1.

5

6

7

8    DATED:  June 7, 2024              TOBEROFF & ASSOCIATES, P.C.

9

10                                     By:  _/s/ Marc Toberoff_____
                                            Marc Toberoff
11
                                       Attorneys for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION